## HUFF v. FORD.

(District Court, S. D. Florida, at Miami.   May 11, 1923.)

1. **Removal of causes ⬳112—Defendant removing cause to federal court and filing demurrers and pleas waived right to question jurisdiction.**

In an action at law removed by defendant to the federal District Court, where defendant neither at the time of the removal nor at any time since objected to the jurisdiction of the court but interposed a demurrer and pleas to the merits and the statute of limitations, he waived his claim of the privilege of asserting want of jurisdiction.

2. **Trial ⬳11(2)—Equitable plea in action at law must be heard by court as chancellor.**

In an action at law in federal District Court, defendant's request for leave to file an equitable plea if it presents an equitable defense must be heard by the court as chancellor, but if it does not set forth an equitable defense the case must continue to be conducted at law, for in such status plaintiff is entitled to the right of trial by jury both under the Seventh Amendment of the U. S. Const., and for the equitable reason that the plea which is in effect a bill in equity is without equity, if the party in whose behalf it is urged has a plain, adequate, and complete remedy at law.

3. **Courts ⬳342—Equitable plea in action at law in federal courts may be filed any time before trial.**

Under Judicial Code, §§ 274a and 274b (Comp. St. §§ 1251a, 1251b), an equitable plea setting forth an equitable defense to an action at law may be offered at any stage of the proceedings before the trial is actually had, and is not objectionable on the ground that defendant had demurred and answered to the merits.

4. **Patents ⬳219(2)—Equitable plea by corporation officer denying that he individually manufactured device no defense to suit for royalties, as manufacture by others for his benefit would not decrease his liability.**

The officer of a large automobile manufacturing corporation which used an invention could neither add to nor subtract from liability under his contract to pay royalties, and an equitable plea alleging that defendant did not individually manufacture either the mechanical device nor the automobiles to which it was applied stated no equitable defense; defendant not being relieved of liability under his contract if such automobiles were manufactured by another for his benefit.

5. **Patents ⬳219(2)—Equitable plea to royalty action alleging plaintiff to have perfected devices while in defendant's employ states no equitable defense.**

In an action for royalties alleged to be due plaintiff on Ford magnetos under contract with defendant, an equitable plea, alleging that plaintiff invented the magneto while in defendant's employ, *held* to state no equitable defense; there being no legal reason why an employer and employee may not mutually agree that the employee shall receive royalties on appliances invented by him, though his salary continues and the facilities and materials used in perfecting the invention are furnished by the employer, the allegation of the plea containing no allegation inconsistent with the existence of the contract sued on.

6. **Patents ⬳219(2)—In action for royalties, equitable plea alleging plaintiff inventor's thriftlessness and improvidence and defendant's charitable gift to him held not to state any equitable defense.**

In an action for royalties alleged to be due plaintiff as the inventor of an automobile magneto, the allegation of an equitable plea sought to be filed by defendant that defendant, knowing plaintiff's thriftless, improvident and spendthrift habits, had provided that plaintiff should receive a sum of money and had caused the same to be paid to plaintiff in installments, was immaterial and showed no equitable defense, neither the character of the plaintiff nor defendant's charitable gen-

erosity to him in any way affecting plaintiff's rights or defendant's liability on the contract set up in the complaint.

**7. Patents ☞219(2)—In action for patent royalties, plaintiff's knowledge of use of appliance by another than defendant not an equitable defense.**

In an action for royalties alleged to be due by reason of contract between plaintiff, the inventor, and defendant, an attempted equitable plea, alleging that plaintiff knew of the use made of the appliance by the automobile company of which defendant was an officer and director, and that he consented to such use, presented no equitable defense; the defendant's liability on his contract being neither increased nor diminished by his permission to the company, or by the company's use of the appliance without his consent.

**8. Patents ☞219(2)—Equitable plea alleging understanding that contract was abrogated held insufficient.**

In an action for the recovery of royalties under an alleged contract between plaintiff and defendant, an equitable plea alleging that plaintiff, an officer of the Ford Motor Company, and such company understood and believed that by the company's employment of plaintiff in the manufacture of automobiles defendant's liability on his contract to pay royalties would be canceled, stated no equitable defense; defendant's erroneous supposition not availing to abrogate the contract.

**9. Patents ☞219(2)—Demand unnecessary as condition precedent to suit for unpaid royalties.**

In an action on contract to recover royalties, an equitable plea, alleging that plaintiff made no demand for such royalties, states no equitable defense; there being no rule of law which requires a demand by plaintiff as precedent to the institution of the action, and it being the duty of the debtor to pay when the debt became payable, and bringing of suit being a sufficient demand in the absence of statutory or contract requirement to the contrary.

**10. Patents ☞219(2)—Equitable plea held to state no defense.**

In an action on contract for the recovery of royalties, an equitable plea as to what the defendant would have done by way of protecting himself by a contract with a motor company which he permitted to use the appliance, if he had realized that the plaintiff would insist upon performance of the royalty contract, states no equitable defense; such allegation being merely of his mental processes and unavailing to give equity to his plea.

**11. Patents ☞219(2)—Lapse of time resulting in embarrassment in obtaining testimony no equitable defense.**

An equitable plea sought to be filed in an action at law on contract for the recovery of royalties, alleging the embarrassment of defendant in obtaining testimony due to the lapse of time, states no equitable defense; the loss of documents and death of witnesses being common casualties in legal warfare.

**12. Action ☞12—Laches or lapse of time less than statutory limitation no defense.**

The question as to the length of time within which an action at law may be begun is fixed by statute, and lapse of time or laches within the statutory limitation is no defense.

**13. Action ☞12—Laches no defense.**

Laches, though a defense to a bill in equity, is not an equitable defense to an action at law, where the limitation is definitely fixed by statute.

**14. Equity ☞87(1)—Laches less than analogous time of limitation no bar.**

Courts of equity, even in cases of concurrent jurisdiction, consider themselves bound by the statute of limitations which governs courts of law in like cases.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

15. **Patents ☞218(1)—That defendant gave away valuable invention no defense to his liability to pay royalties.**

In an action on contract to recover royalties, an allegation in an equitable plea that defendant gave to a motor company, of which he was an officer, and the defendant, an employee, the right to use the invention without payment therefor, states no equitable defense; the giving away of the invention not relieving defendant of his contract obligation to pay royalties.

16. **Patents ☞219(2)—Defendant's plea that plaintiff's failure to make demand for royalties misled defendant into not substituting another device or not procuring indemnity held to state no defense.**

In an action on contract for the recovery of royalties, an equitable plea, alleging that if plaintiff had made seasonable demand for royalties defendant would have required of an automobile company to whom he gave the right to use the invention a contract of indemnity or that he would have substituted another device in place of the invention in suit, states no defense; it being a mere conjecture as to what defendant now believes he would have done and does not relieve him from what he should have done, that is, the performance of his contract obligation to pay the stipulated royalties.

17. **Patents ☞219(2)—Failing memory of witnesses no equitable defense to action at law.**

An equitable plea to an action at law for royalties, alleging that by reason of complainant's delay in bringing suit the recollection of defendant's witnesses has grown dim, states no equitable defense.

18. **Patents ☞219(2)—Averment that material documents have been lost no equitable defense to action at law.**

In an action on contract for royalties, an equitable plea sought to be filed by defendant, alleging that material documents and data had been lost or mislaid, states no equitable defense; there being no averment as to what the documents contained and no averment that an effort has been made to locate them.

19. **Trial ☞11(2)—Voluminous character of testimony and tedious nature of testimony no ground of equitable jurisdiction.**

In an action on contract for the recovery of royalties, an equitable plea, alleging that an accounting is necessary because of the difficulty in determining what would be a reasonable royalty, states no ground of equity jurisdiction, the ascertainment of that fact not being more difficult than the assessment of damages in many cases, and the mere fact that the evidence is voluminous or tedious is not sufficient ground for the removal of the cause from a law court to a court of equity.

20. **Injunction ☞26(3)—Difficulty in ascertaining compensation not ground of equity jurisdiction.**

Equity never takes jurisdiction to enjoin an action at law because of difficulty in determining what would be a reasonable compensation for the wrong alleged, if the wrong itself is such as to support an action at law.

21. **Account ☞6—Equity jurisdiction for adjustment of complicated accounts not created by numerous transactions of same character.**

Equity jurisdiction for the adjustment of complicated accounts does not arise out of the mere fact that there have been a number of transactions of the same character, and the question of determining what would be a reasonable royalty payable under contract on the manufacture of great numbers of the device in question presents no ground for equity cognizance.

22. **Equity ☞51(1)—Multiplicity of suits no ground for equity jurisdiction, where person threatening suits legally entitled to bring them.**

The equity growing out of the multiplicity of suits is an equity which belongs to the party who is being wronged, and not to the party who is doing the wrong, and in an action on contract for the recovery of

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

unpaid royalties equity will not assume jurisdiction merely because the defendant alleges that the plaintiff intends to bring other suits, since, if the plaintiff is entitled to royalties under his contract and defendant persists in using the device without paying royalties, there is no legal or equitable reason why plaintiff should be restrained from enforcing his contract rights by appropriate actions.

**23. Courts ⊜325—Right to question jurisdiction waived by plea to merits.**

In an action on contract for the recovery of royalties, an allegation as to defendant's residence, showing want of jurisdiction, is not available to defendant, constituting as it does the subject-matter of a plea in abatement and waived by defendant's pleading to the merits.

At Law. Action by Edward S. Huff against Henry Ford. On defendant's written request for withdrawal of pleas and leave of court to file an equitable plea. Disallowed.

Carson, Murrell & Farrington and Thomas B. Norfleet, all of Miami, Fla., and T. T. Ansberry and Geo. T. Farrell, both of Washington, D. C., for plaintiff.

Shutts & Bowen, of Miami, Fla., and Kay, Adams & Ragland, of Jacksonville, Fla., for defendant.

CLAYTON, District Judge. The plaintiff filed on March 23, 1922, præcipe in the circuit court of Dade county, Fla., in this action for summons directed to the defendant. Personal service was made March 23, 1922, in accordance with the Florida statute. On the same day the plaintiff filed his declaration, claiming $11,000,000 damages. The first six counts thereof are the common counts. The seventh, which is hereinafter set out in extenso, claims damages for the breach of an alleged contract or agreement whereby the plaintiff invented a magneto for the defendant and for the use of which the defendant became bound to the plaintiff for compensation in the nature of a royalty.

On May 1, 1922, Shutts & Bowen, attorneys for defendant, entered a general appearance. On June 5, 1922, defendant filed in the circuit court of Dade county his petition and bond for removal of the cause into the United States District Court, Southern District of Florida. All requirements were met by the defendant for removal. The case was duly ordered removed and a transcript of all the proceedings in the state court was filed by the defendant in this court on July 6, 1922. On August 4, 1922, the defendant filed demurrer to the declaration and at the same time filed a motion for compulsory amendment of the declaration. On September 9, 1922, this court heard the matter of the defendant's demurrer and motion for compulsory amendment and on the same day overruled each. This fact is reported in 283 Fed. 658.

On September 28, 1922, written stipulation was filed in this court by the attorneys of the plaintiff and the attorneys of the defendant in which it was agreed between the plaintiff and the defendant that the defendant should have until November 15, 1922, in which to plead, demur, or otherwise move, as he, the defendant, might be advised; and, also, the stipulation provided that—

"It is further agreed by and between counsel for the parties that upon the plaintiff filing his replication, demurrer or other motion to defendant's pleas, that defendant will promptly join issue to plaintiff's replication or demur to same and will promptly move with the plaintiff in all ways neces-

sary to the settlement of the pleadings herein and all upon reasonable no-
tice having been exchanged between the parties, said notice not to exceed
five days subsequent to the date of the filing of any plea, demurrer or mo-
tion."

On August 4, 1922, the defendant filed his pleas to the first, second,
third, fourth, fifth, and sixth counts of the declaration, denying that
he was indebted as alleged; stating that the alleged cause of action did
not occur within five years before the suit; that the cause of action
did not occur within four years before the suit; and that the alleged
cause of action did not occur within three years before the suit.

On November 14, 1922, the defendant filed his pleas to the first,
second, third, fourth, fifth, and sixth counts of the declaration on the
ground that the alleged cause, if any at all, within the state of Michi-
gan, did not occur within six years before the suit, and that by the
laws of that state no action thereon could be maintained by reason
of the lapse of six years. All pleas except those first hereinabove
mentioned (being the general issue) were sworn to by the defendant
in his own person.

On November 17, 1922, the plaintiff filed in this court his formal
joinder of issue on all pleas except the sixth plea to the seventh count
of the declaration. On the same day the plaintiff demurred to the
sixth plea to the seventh count of the declaration for the reason that
the seventh ground set up could not bring the case within the statute
of frauds because the contract might have been performed within one
year after the date thereof.

On November 17, 1922, the plaintiff filed his replication to the
second, third, fourth, and fifth pleas of the defendant.

[1] Neither at the time of the removal of the cause nor at any time
since it was removed has the defendant objected to the jurisdiction of
this court. If as an original proposition this court did not have ju-
risdiction, the defendant has waived his claim of the privilege of as-
serting the want of jurisdiction by interposing the demurrer and his
several pleas to the merits and the statute of limitations, all of which
are mentioned in the beginning of this opinion. Removal of Causes by
James Hamilton Lewis, § 36, citing Hanover National Bank v. Smith,
13 Blatch. 224 Fed. Cas. No. 6,035; Smithson v. Chicago G. W. Ry.
Co., 71 Minn. 216, 73 N. W. 853; Hudson River R. & T. Co. v. Day
(C. C.) 54 Fed. 545; T. & P. R. v. Matkin (Tex. Civ. App.) 142 S. W.
604; and other cases in footnote 4.

On March 29, 1923, the defendant, through his attorneys, presented
in open court during the term at which said cause was triable writ-
ten request for withdrawal of his pleas theretofore filed, and at the
same time asked leave of the court to file his equitable plea.

Coming now to the consideration of the declaration and the plea now
sought to be filed as an equitable plea, it is necessary to set out the
seventh count of the declaration and that only. The common counts
are therefore omitted. And for the proper consideration of such plea
it is hereinafter set out.

The count is in these words:

And for the seventh count, plaintiff says that the defendant, Henry Ford,
was on, to wit, March 2, 1908, and for several years prior thereto, engaged

in the manufacture of certain automobiles, commonly known as "Ford automobiles"; that up to a short time theretofore, to wit, the 5th day of January, A. D. 1908, and for several years prior thereto, plaintiff was in the employ of the said defendant as an electrical and mechanical engineer. The defendant being desirous of improving the mechanism of the automobiles which he manufactured did, a short time prior to March 2, 1908, on, to wit, the 5th day of January, 1908, enter into an agreement with the plaintiff, whereby the plaintiff agreed with the defendant to invent a magneto for the defendant that would work on the flywheel of an automobile, for and in consideration of the defendant agreeing that upon the inventing by the plaintiff of such a magneto that the defendant would pay to the plaintiff a reasonable amount as a royalty on each of the magnetos so invented and manufactured and used by the defendant in the construction and manufacture of his said automobiles; that in compliance with the terms and conditions of the said agreement entered into between the plaintiff and the defendant, the plaintiff thereafterwards did invent a magneto that would work on the flywheel of a magneto; and on the 2d day of March, 1908, the said plaintiff made due application to the United States Patent Office for a patent to be issued for his said invention, and in due course, to wit, on the 8th day of July, 1913, a patent was issued for said invention, same being numbered 1,066,729, a copy of which patent is hereto attached marked "Exhibit A" and made a part hereof, said patent being issued to the defendant, Henry Ford, as assignee of Edward S. Huff. That after inventing the said magneto hereinbefore mentioned, this plaintiff continued to experiment and exercise his skill and knowledge as an electrical and mechanical engineer in an effort to improve upon the said magneto so invented as aforesaid by the plaintiff, and did invent a certain new and useful improvement in flywheel magnetos, and did on the 27th day of April, 1908, make due application to the United States Patent Office for a patent to be issued for said invention, and in due course, to wit, on the 26th day of May, 1914, a patent was issued for said invention, same being numbered 1,098,361, a copy of which patent is hereto attached marked "Exhibit B" and made a part hereof, said patent being issued to Henry Ford as assignee of Edward S. Huff. That the issuing of said patents numbered 1,066,729 and 1,098,361, above mentioned, for the two inventions of the plaintiff, to Henry Ford as assignee of Edward S. Huff, was at the request and authorization of the plaintiff to the Commissioner of Patents of the United States, in furtherance of the conditions of the aforesaid agreement between the plaintiff and the defendant. That the defendant did accept the two inventions aforesaid, invented by the plaintiff, which said inventions were not known or used before the invention thereof by the plaintiff, and which were not, at the time of the plaintiff's application for patents therefor, in public use; and the defendant accepted the letters patent issued by the United States Commissioner of Patents for the two said inventions; and the defendant did use and cause to be used and is now using and causing to be used the magneto and improvement in flywheel magnetos so invented as aforesaid by the plaintiff in the manufacture of his automobiles, known as "Model T. Ford automobile," and the defendant did use and cause to be used and is now using and causing to be used the magneto and improvement in flywheel magnetos so invented as aforesaid by the plaintiff in the manufacture of his tractors known as "Fordson tractor," and the defendant did use and cause to be used and is now using and causing to be used the magneto and improvement in flywheel magnetos so invented as aforesaid by the plaintiff in the manufacture of his trucks known as "Ford trucks," and has so used, to wit, 4,500,000 of said magnetos and improvement in flywheel magnetos and continues to use the same in the manufacture of his said automobiles, tractors and trucks; and although this plaintiff has done and performed all the things and acts on his part to be done and performed in accordance with the terms and conditions of the said agreement hereinbefore mentioned, entered into between the plaintiff and the defendant, yet the defendant has failed and refused to carry out, keep and perform the agreements on his part to be kept and performed, although plaintiff has repeatedly requested him so to do; except that the defendant

did pay to this plaintiff the sum of $10,000 which was agreed to be paid by the defendant to the plaintiff upon the manufacturing and using by the defendant of the first 20,000 magnetos, and improvements thereto which had been invented by the plaintiff.

That the plaintiff says that a reasonable royalty for the use of said inventions covered by the patents hereinbefore mentioned, which have been and are now being used by the defendant, under the agreement hereinbefore mentioned, is reasonably worth, to wit, $2.50 each upon each magneto and improvement thereto.

## And the equitable plea sought to be filed is in these words:

For an equitable plea to each and every count of the plaintiff's declaration, severally, defendant says:

I. That plaintiff's alleged causes of action set forth in the common counts of his declaration are none other than he has attempted to set forth in the seventh or special count of said declaration, but defendant says that plaintiff should not have or maintain any such alleged cause or causes of action for the following, among other, reasons:

That for a long period prior to January, 1908, and at all times subsequent thereto, the defendant was an officer, director and large stockholder in the Ford Motor Company, a corporation, which company was then and still is engaged in the manufacture of Ford automobiles and accessories, and then had and still has a plant in the city of Detroit, Mich., where such automobiles and accessories were and still are being manufactured; that defendant individually has never manufactured automobiles or magnetos.

That for some years prior to January, 1908, which is the time alleged by plaintiff when the contract set forth in plaintiff's declaration was made, plaintiff had been in the employ of the defendant as a mechanic and electrician. That during the course of said employment the type of magneto in use on the automobiles then being manufactured by said company was of the horsehoe type adjusted upon a bracket, from which it supplied the ignition necessary for the operation of such cars; that defendant at that time was possessed of knowledge of a certain principle long before discovered of supplying ignition by a process of rotary motion; that defendant had previously conceived the idea and believed that said principle could be applied by devising a flywheel magneto, that is to say, a magneto could be so devised in connection with and (or) as an integral part of the flywheel of an automobile that the rotary motion of the flywheel would produce the desired ignition for the operation of such vehicles; that plaintiff being so employed generally as a mechanic and electrician as aforesaid, was directed by the defendant, if possible, to devise an application of said principle for a flywheel magneto; that thereupon the plaintiff applied himself to the task which had been assigned to him as aforesaid and for his services in that behalf, as throughout the course of said employment, the plaintiff was paid and he received and accepted a regular weekly compensation; that during the course of plaintiff's said employment needed material and equipment for models, experiments, and tests in plaintiff's efforts to work out said problem, were supplied to the plaintiff without expense to him; that for like purpose plaintiff was likewise supplied with the services and aid of other engineers and mechanics and assistants; that when defendant directed plaintiff to the solution of said problem, the defendant imparted to the plaintiff all of defendant's knowledge concerning the principle aforesaid, and gave the plaintiff the benefit of all of defendant's ideas as to its possible application as foresaid, and constantly, during the course of plaintiff's said employment, personally aided the plaintiff with the defendant's ideas and suggestions for the accomplishment of the purpose in hand; that eventually the plaintiff, with the aid and assistance of the aforesaid, succeeded in applying said principle to a flywheel magneto, and thereafter a patent therefor was issued to the defendant; that none of the expense in connection therewith or therefor was borne by the plaintiff. That plaintiff further, in the course of said employment and under like circumstances aforesaid with the aid of defendant, and defendant's engineers, mechanics, and assistants, devised an improvement upon said

magneto, and likewise a patent therefor was issued to the defendant without expense to the plaintiff; that said patents remained and still are the property of the defendant.

II. Defendant further says that the defendant wishing to reward the plaintiff for the success he had attained in the matter of his employment as aforesaid, provided that the plaintiff should receive the sum of $10,000 as such reward; that at the time the defendant made provision for plaintiff as aforesaid, the defendant knew of plaintiff's thriftless, improvident and spendthrift habits, and for that reason purposely further provided that said reward be paid by installments and not in a lump sum; and thereafter installments of said reward were paid to and received by the plaintiff, said installments covering a period of years until February, 1912, at which time the final payment thereof was made; that said last payment consisted in part of one model T Ford automobile and the remainder in money.

III. Defendant further says that irrespective of whether or not plaintiff had or has a cause of action as alleged in his declaration, that the same is now barred by the staleness of plaintiff's claim and by his conduct and laches as hereinafter set forth, and in this behalf defendant further avers that during the period of 1908 to February, 1912, the date of said final payment, the plaintiff continued to reside in the city of Detroit, Mich., and during said period was employed by the Ford Motor Company in performing various services assigned to him in and about the development and production of Model T Ford cars in which were installed said flywheel magnetos, and received a regular compensation therefor; that plaintiff well knew when said Ford Motor Company began the manufacture of said magnetos and the utilization of the same in the building of Model T Ford cars and (or) engines in, to wit, the fall of 1908, that plaintiff well knew that the old style of magneto formerly in use as aforesaid had been abandoned; that plaintiff well knew during said period that said Ford Motor Company was manufacturing and utilizing said magneto by permission of the defendant in the building of Ford cars and (or) engines in rapidly increasing quantities; that plaintiff knew during said period that during said period said Ford Motor Company greatly enlarged and extended and (or) was preparing to enlarge and extend its plant and facilities for said manufacturing purposes and to further increase the output of said product; that at the time of the final payment aforesaid plaintiff knew that up to that time said Ford Motor Company had manufactured and utilized in the building of Model T Ford cars and (or) engines, at least 100,000 of said magnetos, and yet neither at the time of said final payment nor prior thereto did the plaintiff make any claim or demand whatsoever, either upon the defendant or the Ford Motor Company for any compensation, remuneration, or reward by way of royalty or otherwise other than the balance of the sum of $10,000 provided for by the defendant as aforesaid; that at the time of said final payment as aforesaid the defendant as well as the Ford Motor Company understood that all obligations of defendant and plaintiff in respect to compensation and remuneration received, or otherwise, were completely satisfied and discharged and the plaintiff did not then or theretofore claim to the contrary.

IV. Defendant further says that on the date of said final payment aforesaid the plaintiff voluntarily left the employ of said Ford Motor Company, but continued to reside in and about Detroit, Mich., until the latter part of 1917 or early part of 1918, when plaintiff removed to Miami, Fla. That during the plaintiff's further residence in the city of Detroit as aforesaid he knew of the continued and rapidly increasing manufacture and utilization by the Ford Motor Company of said magnetos in the building of Model T Ford cars and (or) engines; that during said further period before then and since the defendant has resided in and about the city of Detroit, Mich.; that during the period of plaintiff's further residence in and about Detroit as aforesaid, plaintiff made no claim or demand of any nature whatsoever upon the defendant or the Ford Motor Company, and defendant avers the fact to be that since said final payment up to the time of the

institution of this suit plaintiff has never advised this defendant of the nature or amount of any claim or demand whatsoever.

V. Defendant further says that in consideration that the Ford Motor Company had paid for the defendant said regular compensation to plaintiff during the course of plaintiff's employment by the defendant as aforesaid and has paid for defendant all said expenses in and about working out said device, and has paid for defendant all fees and expenses in and about said applications for patents, and has paid at defendant's request the $10,000 reward to the plaintiff as aforesaid, the defendant has permitted during the entire period from 1908 to the present time the Ford Motor Company to manufacture and utilize said magnetos in building Model T Ford cars and (or) engines without demanding, requesting, requiring, or expecting any compensation from said Ford Motor Company to the defendant for such use of said magnetos by way of royalty or otherwise; that during said period said Ford Motor Company has manufactured and so utilized a very large number of said magnetos; that during said period said Ford Motor Company has regularly paid dividends in which defendant has shared alike and pro rata with other stockholders in said company, and so it is that if plaintiff's claim or any part thereof were now allowed and judgment therefor awarded against the defendant, the amount of such judgment would be a total loss to the defendant with no means or right to recoup or recover any part thereof against or from the Ford Motor Company or from the others who were then stockholders of the said company, and whose stock defendant during the year 1919 purchased without knowledge of the said plaintiff's claim, a part of that stock so purchased being afterwards transferred by defendant to other persons, who likewise had no knowledge of the plaintiff's alleged claim; that had the plaintiff seasonably apprised the defendant by suit or otherwise of the claim and demand he now makes in this suit, the defendant could and would have defended the same and shown it to be groundless and would have seasonably made such contract with the Ford Motor Company for the use of said magnetos as would have provided for indemnity against the plaintiff's alleged claim, or would have caused the substitution and use by said Ford Motor Company of some other ignition device, or would otherwise have protected himself against loss which would now result from the recovery by the plaintiff in this suit of a judgment for any sum whatsoever.

VI. Defendant would further show that a large number of persons who were employed by the defendant and (or) by Ford Motor Company during the period when the transaction out of which plaintiff's alleged claim arises, and who were familiar with material parts of such transaction, have now passed out of such employ and are not available as witnesses in defendant's behalf. That the recollections of others, who knew of said transaction, through the lapse of time, have grown dim and indistinct; that material documents and data have been lost or mislaid; that in many divers ways defendant is hampered and embarrassed in now making his defense against the plaintiff's alleged claim, although such defense could have readily and effectively been made at any seasonable time subsequent to January 5, 1908.

VII. Defendant further says that he is a citizen and resident of Detroit, Mich., and has been for many years; that he has never resided in the state of Florida for any consecutive period for as much as three years; that he has been during many years almost an annual visitor to Florida, but that if all of defendant's sojournings in the state of Florida since January, 1908, were put together they would not make a space of three years; that on account of these facts defendant is advised that the statute of limitations of the state of Florida would afford the defendant no protection against the plaintiff's demand; that plaintiff instituted this suit and procured service on this defendant while the defendant was temporarily sojourning in the state of Florida; that in order for defendant to defend against the plaintiff's action at law, defendant will be compelled at great expense and outlay of money to bring witnesses from the state of Michigan to attend a trial in this case, for the reason that defendant cannot an-

ticipate the character of the evidence which plaintiff will attempt to offer in support of his alleged claim.

VIII. Defendant further shows that should the progress of this cause require consideration of the question of the amount of royalty, it must necessarily be handled in equity. The subject-matter presented by plaintiff in his declaration in this cause properly and of right belongs and should be heard and disposed of on the equity side of this court, because plaintiff in his declaration alleges that the amount of royalty which he alleges defendant agreed to pay to plaintiff was left uncertain and undetermined; the determination of a reasonable royalty is always a matter of great difficulty and uncertainty, and involves an extensive, intricate, and complicated examination and comparison of all of the many elements involved therein; that the accounting necessary in order to properly consider and determine such question is of such complexity and difficulty as to be impossible of proper accomplishment in a jury trial; such questions are invariably referred to accounting proceedings.

IX. Defendant further shows that the plaintiff's alleged claim as set forth by him in the seventh count of his declaration is continuous and in character; that defendant fears that plaintiff will from time to time in the future vexatiously commence and prosecute other and further suits against this defendant in this or other courts in connection with or upon further demands, based upon his alleged claim; that such action would constitute a continuing and increasing harassment and annoyance to the defendant and it will become increasingly difficult, even should defendant remain alive, for the defendant to defend himself against such suit or suits.

Wherefore, the premises being considered, this defendant prays:

That the court will defer and suspend further action on the law side of this court in this cause until the merits of the matters herein set forth shall have been considered and determined by this court as the rules and procedure in a court of equity may require, and as to the court's sitting as a chancellor may seem meet, and that upon final hearing of the matters herein set forth the plaintiff may be permanently enjoined from proceeding further on the law side in this cause and from commencing or prosecuting any other or further suit or suits against this defendant upon plaintiff's alleged claim.

That plaintiff's alleged claim may be declared null and void and barred by plaintiff's conduct and laches as herein set forth. That the plaintiff may be required to make full, true, and complete answer hereto and statement of his alleged cause of action. That the defendant may have such other and further relief in the premises as equity may require and as to the court may seem meet, for which the defendant will ever pray, etc.

[2] The question is whether this plea must be allowed. If it presents an equitable defense, it must be now heard by the court as chancellor. Liberty Oil Co. v. Condon National Bank, 43 Sup. Ct. 118, 67 L. Ed. ——, decided November 22, 1922. On the other hand, if it does not set forth an equitable defense, the case must continue to be conducted at law, for in such status the plaintiff is entitled to the right of trial by jury. Seventh Amendment of the Constitution of the United States. And for the re-enforcing reason that the plea itself, which is in effect a bill in equity, is without equity if the party in whose behalf it is urged has a plain, adequate, and complete remedy at law. This ancient rule was the law before it was expressed in the form of section 267 of the Judicial Code (Comp. St. § 1244); Continental Trust Co. v. Tallassee Falls Mfg. Co. (D. C.) 222 Fed. 694, 702, where Boyce v. Grundy, 3 Pet. 213, 7 L. Ed. 655, and Williams v. Neely, 134 Fed. 10, 17, 67 C. C. A. 171, 69 L. R. A. 232, are cited.

However, the plea must be considered in the light of the recent congressional legislation now found in sections 274a and 274b of the

Judicial Code (Comp. St. §§ 1251a, 1251b). The interpretation put upon and the application of these sections by Chief Justice Taft, for the court, in the Liberty Oil Co. Case, supra, occasioned no surprise to anyone familiar, as he was, with the history and purpose of the legislation embodied in these sections; for he had, while President and afterwards at different times, advocated the reform which they evidence. This advanced legislation is in behalf of the better and more economical administration of justice.[1] In the opinion in the case just mentioned the Chief Justice, in speaking of sections 274a and 274b, said that—

"These sections do not create one form of civil action as do the codes of procedure in the States, but they manifest a purpose on the part of Congress to change from a suit at law to one in equity and the reverse with as little delay and as little insistence on form as possible. * * * "

And again, speaking of section 274b, that—

"This section applies to the case before us. The proceeding was changed by defendant's answer and cross-petition from one at law to one in equity with all the consequences flowing therefrom. The better practice would perhaps have been, on the defendant's filing its answer and cross-petition, to order the cause transferred to the equity side of the court. Under Equity Rule No. 22, a suit in equity which should have been brought at law must be transferred to the law side of the court. There is no corresponding provision in rule or statute which expressly directs this to be done when the action begun at law should have been by a bill on the equity side, but we think the power of the trial court to order a transfer in a case like this is implied from the broad language of section 274b, above quoted, but which the defendant who files an equitable defense is to be given the same rights as if he had set them up in a bill in equity, and from section 274a of the Judicial Code quoted below, in which the court is directed, when a suit at law should have been brought in equity, to order amendments to the pleadings necessary to conform them to the proper practice. Webb v. Southern R. Co. (D. C.) 235 Fed. 578, 593, 594."

The plaintiff objects to the filing of this equitable plea, so called, upon the ground that it was not sought to be filed until this cause was at issue upon the law side of the court and the trial was "imminent and impending," and emphasis was laid by the plaintiff upon the fact that the jurisdiction of this court had been invoked by the defendant himself and that he has sought to and had presented on the law side of the court all of his defenses; and that failing in that, afterwards, upon the employment of new counsel, he attempts to repudiate the whole theory of the cause of the defendant in his effort to withdraw all of the pleas interposed to the merits and to set up the alleged equitable plea; and the plaintiff further objects that such plea does not present a case authorizing the interposition of equity.

It is urged that the failure of the defendant to demur to the replication of the plaintiff amounted to a confession on his part of its legal sufficiency; and that he had no defense to the action except upon the merits—the issues of law and fact raised by the plea of the

---

[1] H. R. 18236, by Mr. Clayton, 62d Congress, 2d Session; House Report No. 286, by Mr. Clayton, January 30, 1912; H. R. 4545, by Mr. Clayton, 63d Congress, 2d Session; House Report No. 162, by Mr. Clayton, 63d Congress, 2d Session, December 22, 1913; House Report No. 162, Part 2, same Congress and session by Mr. Dupre.

general issue, and the other pleas referred to as having been filed in the case at law. It has been held that one cannot avail himself of one side of the court as far as he is able to do so, and failing in that invoke the jurisdiction of the other where all the alleged facts set up in the equitable plea were known to the defendant from the beginning and no excuse is offered for failure to plead them theretofore. O. & M. R. Co. v. Heaton, 137 Ind. 1, 35 N. E. 687; Morrison v. Hart, 2 Bibb (5 Ky.) 4, 4 Am. Dec. 663.

[3] Independently, however, of the delay in proposing the equitable plea in this case, the plea itself must now be considered on its merits, for under this federal law cited such plea can be offered at any stage of the proceedings before the trial is actually had. The sections of the Judicial Code, supra, sustain this proposition.

The question, therefore, to be answered here is whether the plea of the defendant really sets up an equitable defense to the cause of action made by the plaintiff, or whether the plea is a mere negative reply containing no equitable defense to the plaintiff's declaration. If it falls under the latter class it cannot be allowed.

[4] At the outset it is to be remembered that the defendant, Henry Ford, is sued individually, and that the Ford Motor Company, a corporation, is a separate entity and that the rights and liabilities of the company are in no wise involved in this case. The defendant is not responsible for the obligations of such company, nor is he entitled to its equities. The fact that he is an officer, director, and large stockholder in this corporation neither adds to nor subtracts from his liability under his contract. This disposes of the first paragraph of subdivision I of the plea.

The second paragraph of subdivision I ends with the statement, "that the defendant individually has never manufactured automobiles or magnetos." It is doubtful whether this is a denial of the allegations of the seventh count of the declaration, the real important part of the plaintiff's declaration. The allegations of this count are that the defendant contracted that he "would pay to the plaintiff a reasonable amount as a 'royalty' on each of the magnetos so invented, manufactured and used by the defendant in the construction and manufacture of his said automobiles." By way of parenthesis: This action is based upon the contract and not upon the patent itself, for it is alleged that the defendant agreed to pay the plaintiff a reasonable sum per car upon which the device perfected by him became affixed. So that the word "royalty" is employed by both the parties in the pleadings as meaning so much for the use per unit of the patented article; compensation going to the plaintiff, the inventor.

The allegation of the breach is that—

"The defendant did use and cause to be used and is now using and causing to be used the magneto and improvement in flywheel magnetos so invented as aforesaid by the plaintiff in the manufacture of his automobiles known as 'Model T Ford automobile,' and the defendant did use and cause to be used and is now using and causing to be used the magneto and improvement in flywheel magnetos so invented as aforesaid by the plaintiff in the manufacture of his tractors known as the 'Fordson tractor,'" etc.

It is perhaps more than doubtful that it is at all material to the defendant's liability whether or not he individually manufactured the magnetos and automobiles, if he had these automobiles manufactured and caused plaintiff's magnetos to be used by others for his benefit. My opinion is that the defendant would be liable under the allegations of the count because the use of the magnetos in the manufacture of automobiles by others for his benefit, even though it be true, as alleged in the plea, that he did not individually manufacture either the automobiles or the magnetos.

[5] In the next averment of the plea the defendant undertakes to deny his liability upon the contract declared on, because, as he in effect says, the plaintiff made the invention while in the employment of the defendant, under his instructions, and substantially at his expense. It is conceded that if the plaintiff and defendant had entered into a contract by which the defendant agreed to pay the plaintiff anything for the privilege of using the magneto so invented, except his ordinary compensation as an employee, a different question would be presented. Undoubtedly, the defendant had the right to enter into a contract with his employee to the effect that he should devote his time to making the invention, even while receiving a salary and other assistance that the defendant could render him; and that if he succeeded in inventing a valuable device defendant would pay him a royalty for its use. He had the right to contract to pay both the salary and the royalty, and, correspondingly, the plaintiff had the right to decline the employment at the salary without the further stipulation for the royalty. This is what the count alleges that the contract provided for. It does not militate against the plaintiff that the declaration fails to refer to the salary, for the count does allege the further contract to pay the royalty; and it does not follow that the contract to pay the royalty would in any wise be invalidated by the fact that the plaintiff was receiving his ordinary salary while at work on the invention. This allegation in the plea, according to my understanding, is in the nature of a negative pregnant; that is to say, it does not deny that the defendant entered into the contract as alleged in the declaration, but alleges merely another fact entirely consistent therewith—both facts might exist without in any manner interfering with each other or the legal consequences following from them when yoked together.

[6] Coming to subdivision II of the plea, the allegation is that the defendant, knowing the plaintiff's thriftless, improvident, and spendthrift habits, had for that reason provided that the plaintiff should receive the sum of $10,000 and caused the same to be paid to the plaintiff in installments. If the plaintiff were the kind of man described, it is immaterial here. The history of the human race shows that many men of genius have been thriftless, improvident, and spendthrifts, and have nevertheless contributed to the public welfare. Such men are as much entitled to the enforcement of their contracts as those of provident and saving habits. If the defendant entered into the contract as set forth in the declaration, or another express or implied contract, his generosity in providing the $10,000 for the plaintiff

may have been a charitable act, and if so he could not, of course, be made liable on that account upon any contract into which he entered. But if he made the contract as alleged in the declaration, he had no right to limit his liability by a payment less than that called for by his obligation. It is to be observed that the plea contains no allegation that the plaintiff consented to receive the $10,000 in full payment of the defendant's liability.

It may be further said that subdivision II sets forth nothing material, or that if any appropriate fact is averred therein it can be shown under the general issue.

Subdivision III of the plea is divisible into two allegations: First, that the plaintiff continued to reside in Detroit, Mich., and was employed by the Ford Motor Company in the construction of cars upon which the magnetos were used, with his permission; and, second, that the defendant and the Ford Motor Company understood that all obligations of the defendant and plaintiff in respect to compensation or remuneration or otherwise were completely satisfied or discharged, and that the plaintiff did not then nor theretofore claim to the contrary. These allegations, so far as I am able to understand, make no reference whatever to any defense, either legal or equitable, to the defendant's liability under the contract declared on in count 7. The plaintiff had the right, of course, to reside in Detroit, Mich., and to work for the Ford Motor Company upon a salary if he saw fit so to do, without in any manner impairing his right to compensation from the defendant under his contract.

[7] That the plaintiff consented to the use of the magneto invented by him upon the automobiles, if this use was caused by the defendant, is necessarily implied in the contract sued upon. The plaintiff claims that he had given his consent for a consideration, which is not denied. There is nothing whatever inconsistent between the fact that the defendant had contracted with the plaintiff for the use of the magnetos and the fact that these magnetos were used by the Ford Motor Company or the defendant with the plaintiff's consent. On the other hand, if the defendant had no connection with the use of these magnetos by the Ford Motor Company, then his liability is neither increased nor diminished by the fact that the Ford Motor Company, a corporation, obtained permission from the defendant to use the invention either with or without consideration.

[8] The last allegation of this paragraph of the plea, to the effect that the defendant as well as the Ford Motor Company understood that by the Ford Motor Company's employing the defendant and paying him a salary for working upon the manufacture of the Ford Company's automobiles would cancel the defendant's liability upon his contract, is simply a statement of the defendant's misapprehension of the law which could in no wise bind the plaintiff. It is elementary that when two men enter into a contract it takes the consent of both to abrogate it; and the rights of neither can be affected by the fact that the other erroneously supposes that he will be relieved of his obligation by some dealings which may take place between the other and

a third person. There is nothing in the plea to bring this case within any exception to the rule.

[9] It is stated in this paragraph that the plaintiff made no further demand upon the defendant or upon the Ford Motor Company. There is no rule of law which required the plaintiff to make demand for payment before instituting this action. It is the duty of a debtor to pay without demand when the debt has become payable; and when he does not do so the bringing of suit is a sufficient demand, unless there is something in the statute or the contract requiring previous notice or demand, which is not the case before the court.

Subdivision IV of the plea merely reiterates the continued residence in Detroit, Mich., of the plaintiff and his subsequent removal to Miami, Fla., and his failure to make demand before bringing suit, all of which has been discussed.

Subdivision V may be subdivided. The allegation is a substantial repetition of previous allegations heretofore considered, of the Ford Motor Company's having employed the plaintiff and the plaintiff's having consented to the defendant's using the magneto without demanding, requiring, requesting, or expecting any compensation from the Ford Motor Company to the defendant for such use of the said magneto by way of royalty or otherwise. As before said, the employment of the plaintiff by the Ford Motor Company is wholly immaterial; nor does it matter whether he consented that this company should use the magneto or not. If the company was using the magneto at the instance of and for the benefit of the defendant in such a way as to make the defendant liable to the plaintiff under his contract, then the plaintiff had no right to object to the use of his magneto by the Ford Motor Company or to demand from it any compensation; and this is so because such use had already been provided for by the contract between the plaintiff and the defendant. While, on the other hand, if the company was using the magneto without any participation by the defendant, then the defendant's liability under his contract with the plaintiff was neither increased nor diminished by the contracts between the defendant on the one part and the Ford Motor Company on the other. The allegation that the defendant did not demand, request, require, or expect the Ford Motor Company to pay the defendant for the use of the magneto is entirely immaterial. Manifestly, the plaintiff had no control whatever over the transactions between the Ford Motor Company and the defendant.

The next allegation is to the effect that the Ford Motor Company paid dividends to the defendant, and if the plaintiff is allowed to recover from the defendant, the amount of the judgment would be a total loss to the defendant without any means or right to recoup or recover any part thereof against or from the Ford Motor Company or from others who were then stockholders in such company.

[10] And as to what the defendant would have done by way of protecting himself by a contract with the Ford Motor Company, if the defendant had realized that the plaintiff would insist upon the defendant's living up to his contract, is a statement of the mental process of the defendant. What the defendant now believes that he

might have done or would have done under the circumstances narrated gives no equity to the plea.

The allegations of the complaint are to the effect that the defendant contracted with the plaintiff to pay him a certain royalty upon all magnetos which he used or caused to be used. It does not appear from the plea whether the use of these magnetos by the Ford Motor Company was caused by the defendant and was at his instance and for his benefit or not. If it was not, then his rights are not, of course, affected by its use. If it was, then the question as to the terms upon which the Ford Motor Company should use at the defendant's instance the magneto (invented by the plaintiff) was a matter entirely between the defendant and the Ford Motor Company over which the plaintiff had no control. It does not appear from the plea whether the defendant's relations with the Ford Motor Company were such as to make it wise and beneficial to the defendant that he should cause the Ford Motor Company to use the plaintiff's invention without providing that the Ford Motor Company should reimburse the defendant for the amount that the defendant had contracted to pay the plaintiff for the privilege of causing such magneto to be so used or not. He had the right, if he saw fit to do so, to cause the Ford Motor Company to use this magneto at his expense without protecting himself against the loss thereby occasioned, if the loss would be thereby occasioned.

The defendant alleges inferentially that the plaintiff is thriftless, improvident, and a spendthrift, and then proceeds in subdivision V to take the position that the plaintiff has lost his rights to insist upon the defendant's living up to his contract because he did not protect the defendant against his own alleged improvidence in having caused the Ford Motor Company to use the plaintiff's magneto without exercising the prudence necessary to see that the expense of this use was borne by the Ford Motor Company rather than by the defendant individually, and this although the plaintiff was alleged to be thriftless and had no control whatever over the arrangement which may have been made between the defendant and the Ford Motor Company for the use of the plaintiff's magneto. This criticism, of course, presupposes that the use of the magneto by the Ford Motor Company was caused by the defendant under the terms of his contract with the plaintiff, for if it were not so caused, then the whole subsequent matter of the Ford Motor Company's use of the plaintiff's magneto is wholly immaterial to the case.

[11] Subdivision VI alleges nothing except the embarrassment of the defendant in obtaining testimony due to the lapse of time. This of itself is no more than a mere incident that may happen in almost any lawsuit. Loss of documents and death of witnesses are common casualties in legal warfare. And subdivision VII merely adds to this alleged embarrassment that the action at law is not barred by the statute of limitations.

[12] The question as to the length of time within which an action at law may be begun is fixed by statute, and I know of no principle upon which an action at law may be enjoined in a court of equity because of laches in the institution of suit within the period fixed by

the statute of limitations. The difficulty of procuring witnesses is the same whether an action be at law or in equity. The question of laches is very often determined in analogy to the statute of limitations.

[13] Laches, it is true, may be a defense to a bill in equity, but it is not an equitable defense to an action at law where the limitation is definitely fixed by statute.

[14] Courts of equity, even in cases of concurrent jurisdiction, consider themselves bound by the statute of limitations which governs courts of law in like cases. 17 R. C. L. § 100, p. 736. And on page 738 of the same authority the rule is stated that—

A suit in equity will not be barred by laches before the time fixed by the analogous statute of limitation at law. One way of expressing this rule is to see that chancery courts adopt the time fixed by the statutes of limitations for barring claims at law in analogous cases as the period at the end of which they will conclude a recovery in equity.

And 25 Cyc. 1025, gives the rule that—

Where equity exercises concurrent jurisdiction, it will consider itself bound by, and will apply the statutes of limitation as statutes rather than by analogy.

In Wagner v. Baird et al., 7 How. (48 U. S.) 257, 12 L. Ed. 681, it is said that—

"In cases of concurrent jurisdiction, courts of equity consider themselves bound by the statutes of limitation which govern courts of law in like cases; and this rather in obedience to the statutes, than by analogy."

In the case of Ide v. Trorlicht, Duncker & Renard Carpet Co., 115 Fed. 137, 53 C. C. A. 341, the patent was issued in 1889 and the suit for infringement was brought in 1899. The Circuit Court of Appeals in the action for infringement of the patent stated the rule as follows:

"While courts of equity usually apply the doctrine of laches by analogy to the statute of limitations of similar actions at law, that rule has no application to this suit, because the trespasses of the defendants for which the complainants now seek relief have been continuous and repeated, and are still continuing, and no bar to a recovery of all the damages which have resulted from them within five years of the commencement of this suit, or to the issue of an injunction to prevent their continuance, has arisen even under the statute of Illinois. The doctrine of laches is an equitable principle, which is applied to promote, but never to defeat, justice. * * * There are no unusual circumstances or conditions in this case which appeal to a court of equity to stay this suit while a similar suit is not barred by the statutes of Illinois. Unreasonable delay and the deceitful acts or silence of a patentee which induce an infringer to incur expenses or to become liable to losses and damages which he would not otherwise have suffered may sometimes justly induce a court of equity to stay his suit for an infringement or for an accounting before the time fixed by the analogous statute of limitations has expired. But delay, unaccompanied by such deceitful acts or silence of the patentee, and by such facts and circumstances as practically amount to an equitable estoppel, will warrant no such action. It is no answer to an application for an injunction to restrain a defendant from committing waste by cutting trees upon the owner's land that, because the latter has taken no steps to prevent the wrongdoer from cutting one half of the trees, he has thereby acquired a right to cut the other half."

In Jonathan Mills Mfg. Co. v. Whitehurst (C. C.) 60 Fed. 81, suit was brought for infringement of a patent, and it was held that—

"The doctrine of laches does not apply to such a case, unless the statute of limitations would be a bar."

In Brown v. Arnold, 131 Fed. 723, 67 C. C. A. 125, the Circuit Court of Appeals of the Eighth Circuit, Judges Sanborn, Van Devanter, and Amidon sitting, Judge Sanborn in the opinion, 131 Fed. p. 727, 67 C. C. A. 129, said:

"Laches is of the nature of estoppel. Courts apply it to suits in equity by analogy to the statute of limitations to protect innocent parties, and to avoid inequitable results. There are no innocent parties who will suffer here by the * * * plain agreement of the defendant, Arnold. * * * In the absence of extraordinary circumstances, such as the destruction of muniments of title, death or removal of parties, many innocent purchasers, radical changes in the còndition or value of property or its speculative character, courts of equity never apply the doctrine of laches earlier than at the expiration of the time limited for the commencement of analogous actions at law."

It will be observed from an examination of the plea that no grounds of estoppel are pleaded, neither fraud nor an intent to mislead is charged against plaintiff. The averments of the equitable plea of laches may be summarized as follows: (1) Plaintiff's knowledge of the use of the magneto by defendant;. (2) failure to demand payment or royalties therefor; (3) defendant permitted the Ford Motor Company, of which he was a stockholder and director, to use the magneto without compensation to him, except the payment of $10,000 award to plaintiff; (4) if demand had been seasonably made, defendant would have contracted with the Ford Motor Company for indemnity, or substituted another device; (5) witnesses who were familiar with material parts of the transaction on which plaintiff's claim is founded have left defendant's employ and are no longer available as witnesses; (6) the memory of otherwitnesses has grown dim; (7) that material documents or data have been lost or mislaid.

[15] The only loss complained of results from the fact that defendant claims he gave the Ford Motor Company the privilege of using the valuable invention in question without compensation. Plaintiff claims there was a promise to pay him the reasonable value of the invention. If this is true it cannot be reasonably contended that defendant, by giving away the invention, absolved himself from the obligation to pay plaintiff.

[16] Defendant also states that if a seasonable demand had been made he would have made a contract for indemnity or substituted another device. This is a mere conjecture as to what the defendant now believes he would have done, as I have said. This cannot relieve him from what he should have done, for he was obligated by contract to pay for the use of the magneto invented by the plaintiff. The reasonable value of the magneto is all plaintiff is asking in this case.

I have attempted to show that the fact that witnesses who know of the transaction are no longer in the employ of defendant is not material. Defendant does not state who the witnesses are, what facts they know, nor that he has made any effort to locate them.

[17] The fact that the recollection of some witnesses has grown dim is a plea that might be resorted to in almost any case, if it were a good defense; but such it cannot be.

[18] Finally defendant states that material documents and data have been lost or mislaid. No statements are made as to what the docu-

ments contain, nor is there an averment that an effort has been made to locate such documents. No showing is made which would even justify a court to sustain a motion to continue the cause, much less to enjoin, or stay the prosecution of plaintiff's cause.

Applying the rule announced by Judge Sanborn in Brown v. Arnold, supra, to the facts, we find from an examination of the plea that no unusual conditions exist and no extraordinary circumstances are shown—no loss of muniments of title; no innocent persons will suffer.

Pomeroy's Equity Jurisprudence, vol. 5, par. 2067, says:

> Where the primary rights of both parties are legal, and courts of law will grant their remedies, and courts of equity may also grant their peculiar remedies, equity will not interfere to restrain the action or judgment at law, provided the legal remedy will be adequate; that is, provided the judgment at law will do full justice between the parties, and will afford a complete relief; the adequacy or inadequacy of the legal remedy is the sole and universal test. On the other hand, in cases of this general class, equity will enjoin the action at law, and will determine the whole cause, whenever the legal remedy is inadequate; and the legal remedy is deemed to be inadequate if the ends of justice would not be satisfied by a mere judgment for the defendant in the action at law, but would require that some distinctively equitable relief, such as a cancellation or a reformation of the instrument sued upon, be conferred upon him.

[19] Subdivision VIII is an insistence that an accounting is necessary because of the difficulty in determining what would be a reasonable royalty, but the ascertainment of that fact is not more difficult than the assessment of damages in many cases where contracts are breached. If the evidence is merely voluminous or tedious, such circumstance is not sufficient for removing a case from a law court to a court of equity. Bowen v. Chase, 94 U. S. 812, 24 L. Ed. 184.

Subdivision IX insists that the cause should be transferred to the equity side of the docket because of the necessity for a permanent injunction to prevent the plaintiff from suing the defendant in the future for such other compensation as may accrue under the contract.

[20, 21] As to this, it must be said that a court of equity never takes jurisdiction to enjoin an action at law because of the difficulty in determining what would be a reasonable compensation for the wrong alleged if the wrong itself is such as to support an action at law. There are many cases which will support an action at law where the compensation must be determined by the reasonable value. And it is indeed difficult to understand why a court of equity should be regarded as more competent to determine the reasonable value of any right than a court at law. Moreover, in any contract, in which the compensation is not fixed, it can be determined only by the inquiry as to reasonable value; and the difficulty in determining this measure of proof is in no sense a matter of equity; nor does equity for the adjustment of complicated accounts arise out of the mere fact that there have been a number of transactions of the same character. Bowen v. Chase, supra. The question as to what would be a reasonable royalty upon a magneto does not appear to involve any more serious difficulty than a question as to the reasonable value of any other machine or apparatus. And when the reasonable royalty on one magneto is

determined, it is but a simple matter to multiply it by the number of magnetos used.

[22] Referring to the alleged necessity for an injunction to restrain the plaintiff from bringing other suits, the theory of the plea has even less merit. The equity growing out of the multiplicity of suits is an equity which belongs to the party who is being wronged and not to the party who is doing the wrong. I know of no equity which can be vested in any man to restrain another from bringing suit against him for future wrongs which he purposes to commit against that other. If the plaintiff in this case has no contract with the defendant, then, of course, he cannot recover, and it will be so adjudicated. If he should thereafter proceed in bringing a number of suits upon an alleged right which has already been adjudged that he does not possess, he may perhaps be enjoined from doing so. But if the contract does exist and the defendant is liable to the plaintiff thereon, his right to maintain an action at law cannot be defeated because the defendant may intend to incur further liabilities which he will not discharge. In other words, there is no equity to enjoin the plaintiff in this case from bringing suits at law upon all liabilities which the defendant may hereafter incur by reason of his failure to perform his contract. It seems to me to be a rather remarkable proposition to assert that a defendant who is liable at law upon his contract should be entitled to file a bill in equity to enjoin the plaintiff from bringing any further suits upon his contract for liabilities which the defendant may subsequently incur by reason of his refusal to live up to his contract after the court shall have adjudicated its validity. And equally remarkable is it that a party who has entered into no contract and, therefore, has a perfect defense at law upon an action under an alleged contract, should be entitled to file a bill in equity to enjoin the plaintiff from bringing further suits which he has no reason to anticipate will be brought after it has been adjudged that no such contract exists.

[23] There remain only the allegations of the plea as to the defendant's residence. This, of course, is available equally at law or in equity, but it is not available in this case upon either side of the docket, as it constitutes the subject-matter only of a plea in abatement which has been waived by the defendant's pleading to the merits. Removal of Causes by Lewis, supra. As I see this matter, the plea which is proposed sets up no defense either at law or in equity.

The nearest approach to a defense is the allegation that the defendant individually has neither manufactured automobiles nor magnetos. Perhaps this would constitute a complete answer to the plaintiff's complaint at law in the nature of a general issue if the contract were considered as providing only where the automobiles or magnetos were manufactured by the defendant individually. However, it seems to me that the proper consideration of the contract does not support this theory, but that it provides for a reasonable royalty upon each magneto so invented and manufactured by any person whomsoever where used by the defendant in the construction and manufacture of his automobiles, etc., and that it is immaterial whether the automobiles were constructed and manufactured by the defendant individually, or wheth-

er the defendant had them constructed and manufactured by some other person under a contract.

I am of opinion that the plea which is now sought to be filed does not present a case for equitable cognizance. Every defense which it contains can be made under the pleas on the law side of the court. If this plea were in the form of a bill in equity enjoining plaintiff's action at law, a motion to dismiss it for the want of equity would be granted. Judging the plea by such test and treating the plaintiff's objection as equivalent to such motion, it must be disallowed.

Appropriate order will be entered.