## BOWEN *v.* CHASE.

1. A trust, created in order to give a married woman the separate and exclusive use of land, free from the control of her husband, will be sustained; by converting it into a legal estate, its purpose would be defeated, as, by virtue of his marital rights, the land would be placed under his control. *So held*, in regard to the effect of certain conveyances of land in New York, set out in the opinion of the court, which were executed in 1827 and 1828 to Michael Werckmeister by Stephen Jumel, upon certain trusts which limited a life-estate to the separate use of Eliza Brown Jumel, his wife, with a general power of appointment during her lifetime, and, on failure to make such appointment, to her heirs in fee-simple.

2. After the date of those conveyances, the said Eliza, by deed, bearing date Nov. 21, 1828, duly executed, as required by the trust, made an appointment of the land, in the following words, to wit: "Now I, the said Eliza Brown Jumel, do hereby direct, order, limit, and appoint that, immediately after my demise, the said Michael Werckmeister, or his heirs, convey all and singular the said above-described premises to such person or persons, and to such uses and purposes, as I, the said Eliza Brown Jumel, shall, by my last will and testament, under my hand, and executed in the presence of two or more witnesses, designate and appoint, and, for want thereof, then that he convey the same to my husband, Stephen Jumel, in case he be living, for and during his natural life, subject to an annuity, to be charged thereon, during his said natural life, of six hundred dollars, payable to Mary Jumel Bownes, and, after the death of my said husband, or in case he shall not survive me, then, immediately after my own death, to her, the said Mary Jumel Bownes and her heirs in fee." *Held,* that, after the termination of said Eliza's separate interest for life, the appointment limited the equitable estate in the land, and vested in said Stephen and Mary immediate interests, although they did not take effect in possession until the death of said Eliza, and were subject to be defeated by the exercise of her reserved power of disposing of the land by her last will and testament.

3 The effect of the chapter of the Revised Statutes of New York, touching uses and trusts (1 Rev. Stat. 727), which went into operation Jan. 1, 1830, upon the estates created by the trust and appointment, considered; but, in the view taken by the court of this case, it is not material whether they were, by the statute, turned into legal estates, or remained, as they were originally, merely equitable in their nature.

4. The appointment in favor of said Mary was a voluntary one; and as said Eliza had a power to lease and a power to convey, assure, and dispose, which latter power manifestly includes a power to sell, not only by the terms used, but, in this trust, by the direction as to the disposition of the purchase-money "in case of an absolute sale," sales of the land to actual purchasers for a valuable consideration were effectual, and superseded the prior appointment in favor of said Mary. It was not necessary to their validity that said Eliza, in making that appointment, should have expressly reserved a power of revocation.

5. Where the subsequent appointments were voluntary, or intended merely as means of restoring the property to its original trusts, or of revesting it absolutely in said Eliza, the interest of said Mary, whether it be regarded as a legal or an equitable estate, would not be thereby displaced.

6. Certain appointments, subsequent to that in favor of said Mary made by said Eliza, who survived her husband and died intestate in 1865, declared to be voluntary, and for the purpose of revesting the title in said Eliza. Bowen, claiming to be her sole heir-at-law, has brought sundry actions of ejectment to recover the land. Said Mary died intestate in 1843. The appellees are in possession of the land, and claim, as her heirs-at-law, under the appointment in her favor. *Held,* that they are entitled to relief in a court of equity. If their estate is to be regarded as still an equitable one, their right to such relief is undoubted, no matter where, or in whom, the legal estate may be. If, by virtue of the statute, their equitable estate was converted into a legal

estate, they have good cause to come into that court for the purpose of removing the cloud upon their title created by the subsequent voluntary appointments and conveyances.

7. That the evidence is merely voluminous or tedious is not sufficient cause for removing a case from a court of law to a court of equity.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

The case is stated in the opinion of the court.

Argued by *Mr. M. E. Sawyer* and *Mr. L. S. Chatfield* for the appellant, and by *Mr. James C. Carter* for the appellees.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The principal objects of the bill in this case, which was filed in the court below by the appellees, Nelson Chase, Eliza Jumel Pery, and Paul R. G. Pery, her husband, and William I. Chase, were to establish their title to certain lands in the city of New York, known as the Stephen Jumel property, and to enjoin George W. Bowen, the appellant, from prosecuting certain actions of ejectment, one brought by him to recover the property above named, and the others to recover certain lands in Saratoga, belonging to the late Madame Jumel, widow of Stephen Jumel, and claimed by the appellees by way of satisfaction for certain charges against her estate, as well as by conveyance from her supposed heirs, children of a deceased sister.

Stephen Jumel was the owner of a lot at the corner of Broadway and Liberty Streets, and of several tracts of land on Harlem Heights, in the upper part of New York City. In 1827 and 1828, by certain mesne conveyances, the greater portion of this property was conveyed to one Michael Werckmeister upon the following trusts, namely: —

" In trust that the said party of the second part (Werckmeister) and his heirs collect and receive the rents, issues, and profits of the said above-described and hereby-conveyed premises, and every part and parcel thereof, and pay over the same unto Eliza Brown Jumel (the wife of Stephen Jumel, late of the city of New York, now of Paris, in France) or, at her election, suffer or permit her to use, occupy, and possess the said premises, and to have, take, collect, receive, and enjoy the rents and profits thereof, to and for her own separate use and benefit, and to and for such other uses and

purposes as the said Eliza Brown Jumel shall please and think fit, at her own free will and pleasure, and not subject to the control or interference of her present or any future husband, and the receipt and receipts of her, the said Eliza Brown Jumel, shall at all times be good and sufficient discharges for such payments, and for such rents and profits to him, the said party of the second part, his heirs, executors, and administrators, and to the person or persons who are or shall be liable to pay the same; and upon this further trust, that the said party of the second part or his heirs lease, demise, let, convey, assure, and dispose of all and singular the said above-described premises, with their and every of their appurtenances, to such person or persons, for such term or terms, on such rent or rents, for such price or prices, at such time or times, to such uses, intents, or purposes, and in such manner and form, as she, the said Eliza Brown Jumel, notwithstanding her present or any future coverture, as if she were a *feme sole*, shall, by any instrument in writing, executed in the presence of any two credible witnesses, order, direct, limit, or appoint; and in case of an absolute sale of said premises, or of any part thereof, to pay over the purchase-money to the said Eliza Brown Jumel, or invest the same as she shall order and direct; and upon this further trust, upon the decease of the said Eliza Brown Jumel, to convey the said above-described premises, or such parts thereof as shall not have been previously conveyed by the said party of the second part, or his heirs, and with respect to which no direction or appointment shall be made by the said Eliza Brown Jumel in her lifetime, to the heirs of said Eliza Brown Jumel in fee-simple; and pay over to the heirs of the said Eliza Brown Jumel such moneys as shall remain in the hands or under the control of the said party of the second part or his heirs, arising from collections of the rents and profits, or of the proceeds of the sales of the above-described premises, or any part thereof."

On the twenty-first day of November, 1828, the said Eliza Brown Jumel, by a deed duly executed as required by the trust, made an appointment of all the lands conveyed in trust, in the following terms, to wit: —

"Now I, the said Eliza Brown Jumel, do hereby direct, order, limit, and appoint, that, immediately after my demise, the said Michael Werckmeister, or his heirs, convey all and singular the said above-described premises to such person or persons, and to such uses and purposes, as I, the said Eliza Brown Jumel, shall by my last will and testament, under my hand, and executed in the pres-

ence of two or more witnesses, designate and appoint; and for want thereof, then that he convey the same to my husband, Stephen Jumel, in case he be living, for and during his natural life, subject to an annuity, to be charged thereon during his said natural life, of six hundred dollars, payable to Mary Jumel Bownes, and after the death of my said husband, or in case he shall not survive me, then, immediately after my own death, to her, the said Mary Jumel Bownes, and her heirs in fee."

It is on this trust and appointment that the appellees rely as the foundation of their title to what is generally known as the Stephen Jumel estate. Mary Jumel Bownes, the appointee of the residuary estate, was the adopted daughter or *protegée* of Stephen Jumel and Madame Jumel his wife, and the reputed niece of the latter. In 1832, Mary Jumel Bownes became the wife of Nelson Chase, and had by him two children, Eliza Jumel Pery and William I. Chase, appellees in this case. She died in 1843, leaving these children her sole heirs-at-law, in virtue of which they claim title to the estate.

The appellant claims to be an illegitimate son of Madame Jumel, born in 1794, before her marriage with Stephen Jumel; and by virtue of that relationship, and of a statute of New York, passed in 1855, enabling illegitimate children to inherit from their mother, he claims to be her sole heir-at-law. He resists, on various grounds, the claim of Mrs. Chase, and her heirs under the appointment. First, he contends that Madame Jumel took a legal estate in fee-simple by virtue of the trust-deed. But if not, then he contends, secondly, that by certain conveyances and appointments made by Madame Jumel, under the powers contained in the trust-deed, the appointment in favor of Mrs. Chase was displaced, and superseded by other estates which inured to Madame Jumel.

The conveyances and appointments referred to under the second head are the following: —

*First*, A conveyance to Alexander Hamilton by Werckmeister, the trustee, at the request and by the appointment of Madame Jumel, dated the tenth day of January, 1834, of ninety-four acres of land at Harlem Heights, for the expressed consideration of $15,000. On the twenty-first day of October, in the same year, this property was reconveyed by Hamilton to

the trustee, upon the same trusts declared in the original deed of trust.

*Secondly,* A conveyance by the trustee, at the instance and appointment of Madame Jumel, made on the twentieth day of August, 1842, to one Francis Phillippon, of a large portion of the estate, for the expressed consideration of $100,000; and a reconveyance of the same property, on the same day, by Phillippon to Madame Jumel in fee, for the expressed condition of one dollar.

Besides these conveyances, in 1850, a lot of thirty-nine acres, being part of the property on Harlem Heights, was sold and conveyed to Ambrose W. Kingsland; and, in 1853, another lot of three acres, to Isaac P. Martin : which conveyances are admitted to have been made to actual purchasers for valuable consideration.

The effect of these various deeds and conveyances is now to be considered. And, first, that of the trust-deeds executed to Werckmeister in 1827 and 1828. There were two of these deeds, but the trusts in both were precisely the same.

The limitations of this trust are very clear and plain, being of a life-estate to the separate use of Eliza Brown Jumel (known as Madame Jumel), with a general power of appointment during her lifetime; and, on failure to make such appointment, to her heirs in fee-simple.

The counsel for the appellant contends that this trust amounted to a use of the lands, and that, under the old statute of uses and trusts, it operated to vest the legal estate in fee in Madame Jumel. But we think that the authorities are very clear, that where a trust is thus created for the benefit of a married woman, for the purpose of giving her the separate use and control of lands free from the control of her husband, it will be sustained; since to merge the trust in the legal estate, or, to speak more properly, to convert it into a legal estate, would have the effect of placing the property in the husband's control by virtue of his marital rights, and would thus defeat the very purpose of the trust. *Harton* v. *Harton,* 7 T. R. 653; Cornish on Uses, 59, sect. 6; *Rife* v. *George,* 59 Penn. 393.

The legal effect of the appointment made by Madame Jumel, Nov. 21, 1828, we do not regard as any more doubtful

than that of the trust. It was manifestly this, that, subject to Madame Jumel's right of disposing of the lands by will (which right she reserved), and after the termination of her separate interest for life, the equitable estate in the lands was limited to her husband for life, with remainder to Mary Jumel Bownes in fee-simple. This is so obvious as to require no elaboration of argument or discussion. The interests limited to Stephen Jumel for life, and to Mary Jumel Bownes in fee, were immediate vested interests, though to take effect in possession at a subsequent period; namely, at the death of Madame Jumel, and subject to be devested by her reserved power of disposing of the lands by will. The circumstance that the appointment in their favor is, in form, a direction to the trustee to convey to them, does not derogate from the vesting quality of their equitable interests in the mean time. The conveyance would be necessary for the purpose of clothing them with the legal estate. *Stanley* v. *Stanley*, 16 Ves. 507; *Phipps* v. *Ackers*, 9 Cl. & Fin. 594; 4 Kent's Com. 204; *Radford* v. *Willis*, L. R. 12 Eq. Cas. 110; L. R. 7 Ch. App. 11.

The effect of the Revised Statutes of New York upon this trust is next to be considered. The chapter which contains the article on Uses and Trusts (1 Rev. Stat. 727) went into operation on the 1st of January, 1830. By this article all passive trusts were abolished, and the persons entitled to the actual possession of lands, and to the receipt of the rents and profits thereof, in law or in equity, were to be deemed to have the legal estate therein to the same extent as their equitable estate; saving, however, the estates of trustees whose title was not merely nominal, but was connected with some power of actual disposition or management in relation to the lands. Future trusts were allowed to be created to sell land for the benefit of creditors, or to create charges thereon, or to receive the rents and profits, and apply them to the use of any person for life or any shorter term. In construing these provisions, the courts of New York have held that a trust to receive and pay over rents and profits is valid; but that a trust for the use and benefit of the beneficiary, not requiring any action or management on the part of the trustee, except, perhaps, to make conveyances at the direction and appointment of the

beneficiary, is not a valid trust within the statute, but inures as a legal estate in the beneficiary. This, we think, is the general result of the cases. See *Leggett* v. *Perkins*, 3 Comst. 297; *Leggett* v. *Hunter*, 19 N. Y. 454; *Wood* v. *Mather*, 38 Barb. 477; *Anderson* v. *Mather*, 44 N. Y. 257; *Frazer* v. *Western*, 1 Barb. Ch. 238.

In applying the principle of these cases to the case before us, we are met by the alternative character of the trust, namely, that the trustee shall either collect and receive the rents and profits, and pay them over to Madame Jumel, or, at her election, shall permit her to use, occupy, and possess the premises, and collect and receive the rents and profits to her separate use; and, in either case, to convey as she might direct, or to her heirs in case no direction be given. The first of these alternatives, according to the cases, would be a valid trust; but the second is equivalent to nothing more than a mere trust for her use and benefit. During the life of her husband (who died in 1832), it might perhaps be fairly contended that the existence of the legal estate in the trustee was necessary to protect her in the enjoyment of the property as separate estate free from the control of her husband. But, after his death, the option of managing the property herself being in her, and not in the trustee, we are inclined to think that the trust became a mere passive one, and that the equitable estates were, by the Revised Statutes, converted into legal ones. This view is corroborated by the opinion of Chancellor Walworth, who had before him some questions concerning a portion of the estate in 1839, and who, in relation to Madame Jumel's interest, used this language: "Her equitable interest therein, as *cestui que trust*, being turned into a legal estate by the provisions of the Revised Statutes;" citing the section above referred to. *Jumel* v. *Jumel*, 7 Paige, 595. It is true, as said by the counsel for the appellees, that the point in question was not necessary to the decision in that case; but the observation shows the impressions of an eminent judge, when the very matter was before his mind, and we have not been referred to any New York decisions derogatory to this view of the case.

However, the view which we take of this case will not render it material whether the estates created by the trust and

appointment became legal estates, or remained, as they were originally, merely equitable in their nature.

The more material question is as to the effect of the conveyances made by Madame Jumel, and by the trustee in obedience to her direction and appointment subsequent to the death of her husband.

We may dismiss the notion which pervades the argument of the counsel for the appellees, that these conveyances were a fraud upon the appointment made in behalf of Mary Jumel Bownes (or Mrs. Chase). However proper that appointment may have been, considering the relations which the appointee sustained to Mr. Jumel and his wife, as their adopted daughter, it was, nevertheless, only a voluntary one ; and the subsequent appointments can in no wise be regarded as frauds upon it. They were, or they were not, such appointments as Madame Jumel still had the power to make, and their effect is to be judged of by the nature of her power, and by that circumstance alone.

It is contended by the counsel for the appellant, that, where several distinct powers are given in the same instrument, the execution of one of these powers superior in dignity to others will supersede and override the latter, though executed first. This is, to a certain extent, true, as shown and explained by Mr. Sugden in his work on Powers, in the passages referred to. The execution, for example, of a power of sale will supersede all other powers, for it must necessarily do so in order to have any effect.    Mr. Sugden, in illustrating the rule, says : —

" Thus a power of sale must defeat every limitation of the estate, whether created directly by the deed or through the medium of a power, except estates limited to persons standing in the same situation as the purchaser, for example, a lessee; for the very object of a power of sale is to enable a conveyance to a purchaser discharged of the uses of the settlement, and it is immaterial whether any particular use was really contained in the original settlement, or was introduced into it in the view of the law by the execution of a power contained in it." 2 Sugd. on Powers, 47, 48 (6th ed.).

In the present case there was a power to lease, and a power to convey, assure, and dispose   That the latter power included

a power to "sell" is not only manifest from the words, but from a subsequent passage of the trust, which directs as to the disposition of the purchase-money "in case of an absolute sale." At the same time, the words are so general as to authorize a disposition in favor of a volunteer, or gratuitous beneficiary. Here, then, are really two distinct powers contained in one clause ; and, according to the rules laid down by Mr. Sugden, the power to sell is the superior power, and will override the other power, and supersede it, if previously exercised.

This rule with regard to the relative priority and dignity of different powers in the same instrument, though depending on construction and the presumed intention of the donor, is somewhat analogous to the rule adopted by the courts in construing the act of 27 Elizabeth, respecting fraudulent conveyances. It has been invariably held under that act that a conveyance to a purchaser avoids all prior voluntary conveyances of the same lands ; though, as between two voluntary conveyances, or two conveyances to purchasers, the first will take the precedency. Roberts on Fraud. Conv., pp. 33, 641. So, in regard to double powers, a power to sell or exchange, when exercised, overrides all other distinct powers ; for they are necessarily exclusive of all others ; whereas the uses appointed under other powers may possibly be served out of the estate procured by the price of the sale, or by the exchange. But when a mere power to convey, as distinguished from a power to sell, is once executed in favor of a voluntary beneficiary, it cannot be revoked without reserving a power of revocation, and will not, therefore, be superseded by a subsequent conveyance equally voluntary, made under the same power.

Had the transactions in question been real and effective sales to actual purchasers for valuable consideration, they would undoubtedly have superseded the voluntary appointment in favor of Mary Jumel Bownes. The position of the appellees' counsel, that no subsequent appointment could displace this without having expressly reserved a power of revocation, cannot be maintained, for, as we have seen, a sale does have that effect. There is no doubt, therefore, that the conveyances to Kingsland and Martin were valid and effectual. And the execution of those conveyances cannot be characterized as in any manner

fraudulent. They were conveyances which Madame Jumel, under her original power of appointment, had a right to make, notwithstanding the previous appointment in favor of her adopted daughter.

But the conveyances made to Hamilton and Phillippon were of a different character, and seem to have been intended merely as means of restoring the property to its original trusts, or of vesting it absolutely in Madame Jumel herself, freed from the said appointment. On this point there can be no dispute, so far as regards the deed to Phillippon. It was a mere formal conveyance, made to enable him to reconvey the property to Madame Jumel. As such it was simply voluntary, and could have no paramount effect over the previous appointment in favor of Mary Jumel Bownes.

The conveyance to Hamilton may admit of more doubt. But looking at the whole transaction, the conveyance and the reconveyance, we cannot avoid the conclusion that it was intended as a means of getting rid of the former appointment. The reconveyance by Hamilton to Wreckmeister was equivalent to a cancellation of the pretended purchase. It was not a sale made by Hamilton to Werckmeister, nor a settlement made by him for any purposes of his own. It was simply a handing back of the property. In our judgment, therefore, the two conveyances amounted to a mere formal transfer and retransfer; and, if any sale was ever intended, it was rescinded by the mutual consent of the parties to it. We are of opinion that this transaction did not, any more than that with Phillippon, affect the appointment in question, or the estate of the appointee, whether that estate is to be regarded as a legal or an equitable one.

The next question is as to the title of the appellees to equitable relief for protecting them in the title which they have thus acquired. Madame Jumel died in 1865; and the appellees immediately entered into full possession of all the property in question, both that which was derived from Stephen Jumel and that which is conceded to have been the proper estate of Madame Jumel; and they have been in possession ever since. The appellant, by his several actions of ejectment, seeks to deprive them of that possession. With regard to the Stephen Jumel property, the title to which we have been considering, and which

the appellees claim under and by virtue of the said trust and appointment, it is apparent that, if the estate which they thus acquired is to be regarded as still an equitable estate, their right to the protection of a court of equity is undoubted, no matter where, or in whom, the legal estate may be, — whether in the heirs of Werckmeister, the trustee, or in the heirs of Madame Jumel by virtue of the conveyances above referred to. On the other hand, if, by virtue of the Revised Statutes, the equitable estate of the appellees became converted into a legal estate, they would still have good cause to come into a court of equity for the purpose of removing the cloud upon their title created by the subsequent appointments and conveyances to Hamilton and Phillippon. These instruments on their face purport to be conveyances to purchasers, setting forth pecuniary considerations to a large amount, and, by themselves, would import such a disposition of the lands conveyed as would defeat the appointment made in favor of Mrs. Chase. It is only by bringing them into juxtaposition with the sequent transactions in each case respectively, — that is to say, by the introduction of supplemental evidence, — that they are shown to be ineffective. In view of these considerations, and of the fact that the whole title involves the true construction of the trust and the power of appointment, and the further fact that Madame Jumel was in full possession of the property, using and treating it as her own absolute estate until her death, the appellees were perfectly justified in coming into a court of equity to have these conveyances declared void and without effect.

To this extent we think they are entitled to a decree, including also a decree for a perpetual injunction against the appellant, prohibiting him from prosecuting any action or suit for the recovery of the lands embraced in the appointment made in favor of Mary Jumel Bownes, by the deed of appointment executed by Eliza B. Jumel, and bearing date the twenty-first day of November, 1828.

As to the residue of the relief prayed for, — namely, that the appellees should have the lands and real estate of which Madame Jumel indisputably died seised in fee-simple appropriated to them in satisfaction of the supposed frauds committed by her against the trust, and of the engagements which she is

supposed to have made to settle her estate, or a portion thereof, upon Eliza Jumel Chase, in consideration of her marriage with Mr. Pery, — we are unable to perceive any valid ground for granting the prayer of the bill. If there were no other objections to the decree sought in this behalf, we cannot agree with the counsel of the appellees, that any such fraud as is supposed was practised, or, if attempted, that the attempt was successful; and we fail to see any thing in the proofs adduced with regard to the negotiations of the said marriage sufficient to sustain such a decree.

Nor do we think that the nature of the litigation created by the actions of ejectment, the character and amount of the evidence, or the number of suits, is such as to lay the foundation for the assumption of the entire controversy by a court of equity. Supposing the relationship of the appellant to Madame Jumel to be such as he pretends it is, there does not seem to be any unnecessary multiplication of actions. All the property in the city of New York is included in one suit, and the actions in Saratoga are brought against the several tenants in possession. The power of the courts of law to consolidate actions depending between the same parties, and upon the same questions in controversy, is probably sufficient to prevent any practical inconvenience not inherent in the case itself. If the evidence is merely voluminous or tedious, that circumstance is not sufficient cause for removing a case from a court of law to a court of equity.

The claim made by the appellees to recover from the appellant the sum of $2,500, procured by him by way of compromise from a grantee of Mr. Chase, is, in our opinion, utterly groundless.

*Decree reversed, and cause remanded with directions to enter a decree in conformity with this opinion.*