650 P.2d 432

**DUNLAP INVESTORS LIMITED, a limited partnership, Plaintiff-Appellant,**

v.

**Thomas J. HOGAN and Catherine M. Hogan, his wife, Defendants-Appellees.**

No. 15663.

Supreme Court of Arizona,
In Division.

June 22, 1982.

Rehearing Denied Sept. 14, 1982.

Evans, Kitchel & Jenckes by Burton M. Apker, Phoenix, for plaintiff-appellant.

Marvin Johnson, P. C. by John P. Otto, Phoenix, for defendants-appellees.

CAMERON, Justice.

This is an appeal from the summary judgment granted by the trial court in favor of appellee, Catherine M. Hogan. The effect of the summary judgment was to establish Hogan's right to a parking easement on appellant Dunlap Investor's real

---

property. From that judgment, Dunlap appeals. We have jurisdiction pursuant to Rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer the following questions on appeal:

1. Was the description of the easement in the instant case so vague as to be unenforceable against an innocent third party?

2. Does knowledge by the title insurance company or escrow agent of the easement estop Dunlap from claiming that it did not have notice of the encumbrance?

The facts necessary for a determination of these issues are not in dispute. The controversy concerns two adjoining parcels of land located on the southwest corner of the intersection of 35th Avenue and Dunlap in Phoenix, Arizona. In 1963, title to one parcel was held by Lane Title Company as trustee. The beneficial owner was Marco Investment Corporation, but they were not shown as the owner of record. Marco Investment was the record owner of a second adjoining parcel. Marco conveyed the second parcel to Catherine M. Hogan who erected a tavern on the lot. As a part of the transaction, Marco conveyed, by warranty deed, an easement which would allow Hogan and her patrons the right to park on the adjoining parcel of land in which Marco held a beneficial interest. The pertinent portion of the deed provided:

" * * * Marco Investment Corp., an Arizona corporation, hereinafter referred to as Grantor, and Catherine M. Hogan, wife of Thomas J. Hogan, dealing with her sole and separate property, hereinafter referred to as Grantee, do covenant and agree that no fences or walls of any nature whatsoever shall be constructed between the property conveyed to Grantee herein and any adjoining property owned by Grantor at the date hereof, either by direct ownership or as beneficiary of a real estate trust, and Grantor and Grantee hereby further covenant and agree that there will be uninhibited flow of parking between the subject property conveyed to Grantee and said remaining, adjoining property of Grantor, for a period of 99 years, unless modified by mutual agreement of the parties hereto. It is the intent of Grantor and Grantee to provide a 99 yr. easement for parking for the benefit of the subject property upon the remaining adjoining property owned at the date of this deed by Grantor, and to provide an easement for parking for a period of 99 yrs. for the benefit of said adjoining property of Grantor upon the property conveyed herein to Grantee, * * * "

Between 1963 and 1970, Marco remained the beneficial owner of the servient estate burdened by the parking easement. Legal title to the servient estate passed through a series of trustees until 20 November 1970 when the title holder of record, Transamerica Title Insurance Company, conveyed the title to Marco Investments. At that time, the legal and equitable interests in the servient property merged in the party who had encumbered the property in the first instance, Marco Investment.

Ownership of the servient property then passed through a series of persons until, on 20 June 1977, the property was conveyed to Park West Development Company. Title was insured by Transamerica Title Insurance Company which also acted as escrow agent. There is uncontroverted evidence that the grant of the easement was in a "base file" maintained by Transamerica and which Transamerica used in its search and in insuring the servient property. Park West was not informed by Transamerica, however, of the parking easement.

Park West entered into a contract to sell property to appellant Dunlap Investors Limited, and Transamerica insured the title. A down payment was made and the remaining payments were to be made as the construction progressed. When construction started on the disputed property, Park West received actual notice from Hogan's attorney that a parking easement burdened the property. Dunlap brought suit to quiet title to the property and to have the parking easement declared null and void. From the

granting of summary judgment in favor of Hogan, Dunlap appeals.

## WAS THE DESCRIPTION VOID AS TO INNOCENT THIRD PARTIES BECAUSE OF VAGUENESS?

■ The trust agreement between Marco and its original trustee, Lane Title Company, is not part of the record. Absent an agreement to the contrary, Lane Title held bare legal title to the property with Marco holding all other rights. As the owner of equitable title, Marco's interest constitutes a vested interest in the property itself and not merely a chose in action or a right to profits. See 76 Am.Jur.2d Trusts § 103 (1975); *Bowen v. Chase*, 94 U.S. 812, 24 L.Ed. 184 (1876). As a beneficiary, Marco could freely encumber or alienate any or all of his interest in the trust res. Annot., 34 A.L.R.2d 1335 (1954); 76 Am.Jur.2d Trusts § 107 (1975); *Blair v. Commissioner*, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937).

There is no question that as between Marco and Hogan there existed a valid and enforceable parking easement on Marco's property. At the time of the deed, however, Marco was not the legal owner of the property because its interest was not of record, and the property to be burdened by the easement was not otherwise described. A third party searching the record would not have been able to determine that the property in question was burdened with a parking easement. Even after the legal and beneficial interests were merged, it was still not apparent to a person searching the record as to the location of the parking easement. As the North Carolina court has stated:

"While no particular words are necessary for the grant of an easement, the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements." *Oliver v. Ernul*, 277 N.C. 591, 597, 178 S.E.2d 383, 396 (1971). See also *Vrabel v. Donahoe Creek Watershed Authority*, 545 S.W.2d 53 (Tex.Ct.Civ.App.1976).

■ In the instant case, the servient estate was not identified with reasonable certainty, and at the time of the grant of the easement, Marco was not the record owner of the property. It might be different if the deed had contained a legal description of the servient property. This might put a person searching the record on notice as to the property to be burdened. This was not done in this case, however. The deed conveyed an easement and land that was at the time neither described by the grantor or in which the grantor held legal title. We agree with the Texas Court of Civil Appeals:

"The rule relating to the sufficiency of descriptions of easements is the same as that required in conveyances of land (citations omitted) * * * The description requires a certainty such that a surveyor can go upon the land and locate the easement from such description. * * *" *Vrabel v. Donahoe Creek Watershed Authority*, supra, 545 S.W.2d at 54. See also *Keeler v. Haky*, 160 Cal.App.2d 471, 325 P.2d 648 (1958); *Miller v. Snedeker*, 257 Minn. 204, 101 N.W.2d 213 (1960).

In the instant case, even if the person searching the record came across the grant of easement, they could not, from the instrument, identify the land involved. We believe that the easement is void as to third parties because of vagueness.

We note also that the general recording statute in Arizona provides:

"A. No instrument affecting real property is valid against subsequent purchasers for valuable consideration *without notice,* unless recorded as provided by law in the office of the county recorder of the county in which the property is located." A.R.S. § 33–411. (emphasis added)

Because of the vagueness of the description of the easement in the Marco-Hogan grant, subsequent purchasers of the Marco parcel could not, even by searching back to the original grantor, have discovered the easement and were therefore "without notice," constructive or otherwise, of the encumbrance.

## ACTUAL KNOWLEDGE OF THE EASEMENT

■ But Hogan contends that Dunlap had constructive, if not actual, notice of the

easement. The evidence indicates that the easement was in Transamerica's "base file," and since Dunlap employed Transamerica to insure the title and to act as escrow agent in the transaction, Dunlap had constructive, if not actual, notice of the easement. The trial court stated:

"It is the Court's opinion that the Hogan easement, which was clearly set forth in the Transamerica 'base' file, supplied to the title company notice of the Hogan easement to the land presently possessed by Dunlap Investors Limited. It is therefore clear that any subsequent pruchaser of the land purchased by Dunlap took subject to the easement of Hogan. (i.e. Park West and Dunlap had constructive notice of the easement and cannot claim the rights of bona fide purchasers for value.)"

We do not agree.

Transamerica was not Dunlap's agent for the purpose of the escrow and title search. Transamerica was acting merely as a contractor and insurer of the disputed property, and Transamerica is not charged with the affirmative duty to Dunlap and Park West, its principals, to disclose everything in its files. Transamerica may have been aware of the Marco-Hogan deed title because it was once the legal owner of the property when acting as trustee for the grantor of the easement, but Transamerica's knowledge of encumbrances in other files and other chains of title is not imputed to Dunlap and Park West, the parties to the escrow and for whom titles are insured.

The summary judgment in favor of Hogan is set aside, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

HOLOHAN, C. J., and FELDMAN, J., concur.