229 P.3d 1016

**3502 LENDING, LLC, an Arizona limited liability company, Plaintiff–Appellant,**

v.

**CTC REAL ESTATE SERVICE, Trustee; Reconstruct Company, N.A. Successor Trustee; Mortgage Electronic Registration Systems, Inc., a Delaware corporation, as nominee for America's Wholesale Lender, original beneficiary; Countrywide Home Loans, Inc., Successor beneficiary, Defendants–Appellees.**

No. 1 CA–CV 09–0012.

Court of Appeals of Arizona, Division 1, Department E.

April 29, 2010.

Law Offices of S. Matt Collins LLC by Stephen M. Collins, Chandler, Attorneys for Appellant.

Mariscal Weeks McIntyre & Friedlander PA by Timothy J. Thomason, Charles H. Oldham, Phoenix, Attorneys for Appellees.

## OPINION

WEISBERG, Judge.

¶ 1 In this action, 3502 Lending, L.L.C. sought to quiet title to real property that it had purchased at a trustee's sale. 3502 Lending argued that two prior recorded deeds of trust were defective and did not create senior liens because they failed to include a legal description of the real property. 3502 Lending further asserted that later re-recordings of the deeds of trust to include the legal description did not cure the defects. Nevertheless, the superior court granted summary judgment to a group of defendants who, based on those prior recorded deeds of trust, asserted interests superior to that of 3502 Lending. The defendants included America's Wholesale Lender ("AWL"); CTC Real Estate Services; Reconstruct Company, N.A.; Mortgage Electronic Registration Systems, Inc.; and Countrywide Home Loans, Inc. Only AWL has filed an answering brief in this appeal, but because we find no genuine dispute of material fact or error of law, we affirm the judgment finding that AWL's liens are superior to that of 3502 Lending.

## BACKGROUND

¶ 2 Cecil and Suzanne Graham financed the 2004 purchase of their Paradise Valley home with two loans: one from Lime Financial Services, Ltd. in the amount of $995,000 and a second from Goliath Entertainment, L.L.C. in the amount of $553,000. Deeds of trust recorded in the Maricopa County Recorder's Office secured the loans, with Lime's deed of trust holding senior position.

¶ 3 The beneficial interest in Lime's deed of trust was later assigned to Wells Fargo, and the beneficial interest in Goliath's deed of trust was assigned to Camis, Inc. The Grahams subsequently defaulted on both debts and were facing threatened trustee sales by both Wells Fargo and Camis.

¶ 4 In an effort to avoid the trustee sales, the Grahams secured refinancing from AWL via two loans that were to be secured by their property. One loan was in the amount of $1,425,000 and the other in the amount of $95,000. The Grahams paid the Wells Fargo debt in full and paid Camis $511,000 of the $667,000 owed under its note. The AWL loans were to be secured by new senior deeds of trust, and the Camis debt was to be secured by a new deed of trust junior to those in favor of AWL.

¶ 5 On July 29, 2005, the Grahams executed two deeds of trust in favor of AWL, one for each loan. Both deeds of trust were notarized and incorporated an Exhibit B with the following legal description of the property:

Lot 23, CLEARVIEW EDITION, according to Book 195 of Maps, Page 46, records of Maricopa County, Arizona.

¶ 6 Unfortunately, due to a clerical mistake, both of AWL's deeds of trust were recorded on August 4, 2005 without an Exhibit B attached and consequently without a formal legal description of the real property. The recorded deeds of trust did, however, include the real property's street address and tax parcel numbers, along with the names and addresses of the lender and borrower. AWL's deeds of trust were re-recorded with legal descriptions attached on May 10, 2006. But, the new Camis deed of trust had been recorded in the interval between the August 4, 2005 recording of the first and second deeds of trust and the re-recording of those documents on May 10, 2006.

¶ 7 In November 2005, the Grahams sold the property to Structural Investments & Planning V, L.L.C., which subsequently defaulted on payments due to Camis. On Au-

gust 1, 2006, Camis conveyed its beneficial interest in its deed of trust to 3502 Lending. The sales agreement acknowledged that Camis held only

> b. The beneficial interest in the Deed of Trust and Assignment of Rents dated July 29, 2005, executed by Cecil Graham and Suzanne Graham as Trustor in favor of Assignee as Beneficiary naming Ticor Title Agency of Arizona, Inc., an Arizona corporation, as Trustee which was recorded in the Records of Maricopa County, Arizona, on August 4, 2005, as Instrument No. 2005–1110592 (hereafter "Deed of Trust"), *creating an encumbrance with third lien priority on the residential real property* commonly known as 6324 N. 42nd Street, Paradise Valley, Arizona 85253; . . . .

(Emphasis added.) 3502 Lending was the successful bidder in the trustee's sale of the Camis deed of trust and accordingly received and recorded a trustee's deed in its favor.

¶ 8 3502 Lending then filed suit to quiet title to the property and for slander of title. It argued that the trustee's sale had extinguished AWL's first and second deeds of trust of record because neither had included a legal description when recorded on August 4, 2005. AWL and the other defendants answered, contesting seniority, and the parties filed cross-motions for summary judgment.

¶ 9 The superior court denied 3502 Lending's motion and granted summary judgment to the defendants, including an award of attorneys' fees pursuant to Arizona Revised Statutes ("A.R.S.") section 12–341.01(A)(2003). This appeal followed.

## DISCUSSION

¶ 10 We review the superior court's grant of summary judgment *de novo*. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). Statutory construction issues present questions of law that we likewise review de. novo. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 233, ¶ 8, 119 P.3d 1034, 1036 (App.2005).

¶ 11 A.R.S. § 33–802(A)(2007) provides: *"In deeds of trust the legal description of the trust property shall be given by one of*

*the following methods: 1. By the use of lot, block, tract or parcel as set forth within a recorded subdivision plat."* (Emphasis added.) AWL contends that the superior court properly granted summary judgment because AWL's first and second deeds of trust complied with the statute in that Exhibit B identified the Property by lot and citation to the Maricopa County Recorder's Book of Maps and the exhibits had been attached to the deeds of trust at the time each had been executed. In support of the Defendants' motion, they produced an affidavit from Jan Kailey, a Ticor escrow officer, which stated that Ticor's escrow file, maintained in the regular course of business, contained AWL's executed first and second deeds of trust with legal descriptions attached and that at the time the documents were executed and sent to Ticor's recording desk, the legal descriptions were attached. Precisely when the legal descriptions became detached is not known. But the affidavit is sufficient to support a contention that, as between the parties to the transaction, when executed, the deeds of trust fully complied with the statute.

¶ 12 Furthermore, in response, 3502 Lending offered no evidence to dispute the asserted fact that the AWL deeds of trust had included a legal description at the time they were executed. Therefore, the superior court correctly concluded as a matter of law that the AWL deeds of trust complied with A.R.S. § 33–802(A) and were valid when executed. We next consider whether these incompletely recorded deeds of trust were senior to 3502 Lending's deed of trust.

¶ 13 In further support of their request for summary judgment, the Defendants provided an affidavit by Camis' President, Robert Lubin, who stated that in consideration for receiving the bulk of the money owed by the Grahams, *Camis had "agreed to subordinate its remaining security in the Grahams' property to two security interests in favor of AWL* in the total amount of $1.52 million dollars." (Emphasis added.) Lubin also stated that "all parties to the [financing] transaction understood that the AWL debt would be secured by liens in the first and second position and superior to Camis' lien."

¶ 14 We first note that even an unrecorded instrument is fully enforceable between the parties to the transaction. *See Maddox v. Hardy*, 187 P.3d 486, 492 & n. 20 (Alaska 2008)(although deed was not recorded, title transferred upon execution of the bill of sale)(citing 14 Richard R. Powell, Powell on Real Property § 82.01[3], at 82–13 (Michael Allan Wolf rev. ed.2005) [hereinafter "Powell"] ). The court observed that recording acts are intended to protect a later purchaser's reliance on a seller's title and to provide a means of resolving competing title claims, not to invalidate a transfer between the parties to the deeds of trust. *Id.* at 493 & n. 22 (citing Powell §§ 82.01[2][a], at 82–9, 82.01[3], at 82–11 to 12). Under this principle, AWL's deeds of trust would be binding on the parties to those documents, notwithstanding the defect in the initial recording, because the documents met the requirement of A.R.S. § 33–802(A) when they were executed by the parties to the agreement. *See id.*

¶ 15 Of course, 3502 Lending has not argued that Camis was not bound by the incompletely recorded deeds of trust. Instead, 3502 Lending maintains that it had priority over AWL because it had neither actual nor constructive notice of the defective deeds of trust. We, however, disagree.

¶ 16 The controlling statute, A.R.S. § 33–412(B)(2007), provides that an unrecorded instrument "as between the parties and their heirs, and as to all subsequent purchasers *with notice thereof,* or without valuable consideration, shall be valid and binding." [1] (Emphasis added). We have construed the notice requirement in A.R.S. § 33–412(B) to include receipt of either actual or constructive notice. For example, we have held that a party in interest takes "the mortgage subject only to those interests of which it had actual or constructive notice." *Valley Nat'l Bank of Ariz. v. Avco Dev. Co.,* 14 Ariz.App. 56, 61, 480 P.2d 671, 676 (1971). We added that "[c]onstructive notice includes both information available through recorded documents and knowledge of facts that impose a duty to inquire.... Notice of facts and circumstances which would put a [person] of ordinary prudence and intelligence on inquiry is equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose." *Hall v. World Sav. & Loan Ass'n,* 189 Ariz. 495, 500, 943 P.2d 855, 860 (App. 1997). Accordingly, although a party need not search for such facts, that party also "may not willfully ignore information at hand which would lead to the discovery of unrecorded adverse claims." *Valley Nat'l Bank,* 14 Ariz.App. at 61, 480 P.2d at 676.

¶ 17 3502 Lending argues that it had no constructive notice of the first and second deeds of trust because they had been recorded without the necessary legal description. This argument, however, is undercut by A.R.S. § 33–416 (2007), which provides that a duly acknowledged and recorded grant, deed, or instrument "shall be notice to all persons of the existence of such grant, deed or instrument[.]" Thus, we have held that an invalid deed of trust still may provide constructive notice if it sufficiently "apprised third parties of the nature and substance of the rights claimed under the deed of trust." *Watson Const. Co. v. Amfac Mortg. Corp.,* 124 Ariz. 570, 576, 606 P.2d 421, 427 (App.1979) (deed of trust containing a legal description but missing two pages that contained provisions allowing foreclosure in the event of default could provide constructive notice).[2]

---

1. 3502 Lending argues that the statute is inapposite because (1) it deals with unrecorded instruments and AWL recorded its deeds of trust and (2) 3502 Lending is not a "purchaser." But a recorded defective instrument may be treated as one that was unrecorded. *See Mtge. Elec. Regist. Sys. v. Odita,* 159 Ohio App.3d 1, 822 N.E.2d 821, 825 (2004). Further, courts have not so limited the definition of "purchaser" but have applied it to one who acquires an interest in property. *See Devine v. Town of Nantucket,* 449 Mass. 499, 870 N.E.2d 591, 597 (2007) (citing Powell § 82.01[3], at 82–13 and 14).

2. Although 3502 Lending cites *Dunlap Investors Ltd. v. Hogan,* 133 Ariz. 130, 132–33, 650 P.2d 432, 434–35 (1982), that case is inapposite. There, a title company's "base file" revealed the existence of a parking easement but the court declined to hold that a later purchaser of the servient estate had constructive knowledge of the easement. The title company was not the buyer's agent for purposes of the escrow and title search and thus had no duty to disclose the content of its files. *Id.* at 133, 650 P.2d at 435.

¶ 18 Significantly, here the initial recordings of the first and second deeds of trust did not contain the legal description, but the separate agreement between Camis and 3502 Lending expressly stated that Camis was in "third lien" position. 3502 Lending submitted no evidence of what it understood these words to mean prior to the re-recording of AWL's first and second deeds of trust or what research, if any, it undertook to ascertain their meaning. Furthermore, 3502 Lending did not submit an affidavit stating that it had no knowledge of AWL's loans and deeds of trust but has rested its argument entirely on the purported deficiency of the original AWL recordings.

¶ 19 Moreover, Lubin's declaration stated that Don Davis, principal of an entity managing 3502 Lending and manager of Structural Investments, was aware that AWL was the holder of two deeds of trust and that Camis was secured by a loan inferior to AWL's position. In his declaration, Davis stated merely that Structural Investments was "unaware of the re-recordings", that it "did not approve nor consent to the re-recordings," and that the Grahams did not consent to the efforts to cure the defects with the re-recordings. Davis did not say, however, that he, Structural, or 3502 Lending had been unaware of the existence of AWL's first and second deeds of trust or the initial defective recordings on August 4, 2005.

¶ 20 In light of this record, we find no genuine dispute of fact as to the validity of the first and second deeds of trust or as to 3502 Lending's notice of these documents. The agreement between Camis and 3502 Lending explicitly informed 3502 Lending that the Camis lien held third priority. *See Tucson Fed. Sav. & Loan Ass'n v. Sundell,* 106 Ariz. 137, 142, 472 P.2d 6, 11 (1970) (mortgagee of real property could not claim lack of notice when it possessed two contracts reflecting land purchaser's interest). As a party with notice of a superior interest, 3502 Lending is "not in the position that entitles [it] to attack the trust deed on account of informalities or irregularities in its execution." *Larkin v. Hagan,* 14 Ariz. 63, 72, 126 P. 268, 272 (1912) (creditor with actual notice of a superior interest takes subject to that interest despite irregularities in the deed). Accordingly, the superior court did not err in granting summary judgment. In light of our resolution, we need not address other contentions raised by AWL.

## CONCLUSION

¶ 21 We affirm the grant of summary judgment. AWL has requested an award of its reasonable attorneys' fees incurred in this appeal pursuant to A.R.S. § 12–341.01(A). 3502 Lending has not objected, and thus we grant AWL's request for its attorneys' fees and costs subject to compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: PHILIP HALL and JOHN C. GEMMILL, Judges.