NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DEUTSCHE BANK NATIONAL TRUST COMPANY, *Plaintiff/Appellant*,

*v.*

PHEASANT GROVE LLC, *Defendant/Appellee*.

No. 1 CA-CV 19-0642
FILED 6-4-2020

---

Appeal from the Superior Court in Maricopa County
No. CV2017-001399
The Honorable Connie Contes, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Gust Rosenfeld P.L.C., Phoenix
By Scott A. Malm and Charles W. Wirken
*Counsel for Plaintiff/Appellant*

Robert Stewart & Associates P.C., Phoenix
By Robert L. Stewart Jr. and Sid A. Horwitz
*Counsel for Defendant/Appellee*

_____

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

_____

**M c M U R D I E**, Judge:

**¶1**　　　　Deutsche Bank (the "Bank") appeals from the superior court's order that (1) dismissed the Bank's judicial-foreclosure complaint against Pheasant Grove, (2) declared that Pheasant Grove has clear title to Lot 8 and Lot 9 (the "Lots"), and (3) ordered sanctions against the Bank for violating Arizona Revised Statutes ("A.R.S.") section 33-420 (the wrongful-recording statute). For the following reasons, we reverse the superior court's order and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　In November 2011, Pheasant Grove purchased a North Scottsdale residence—which occupies two subdivision lots—for $2. The seller, First National Bank of Omaha ("FNB"), acquired the property through a trustee's sale after the homeowners defaulted on an $800,000 loan secured by a deed of trust that encumbered the Lots in favor of FNB.

**¶3**　　　　Before the homeowners procured the $800,000 loan from FNB in 2006, they executed a promissory note with Washington Mutual in 2000 for $1.486 million. The note was also secured by a deed of trust encumbering the Lots. The homeowners refinanced the loan twice with Washington Mutual in the two years that followed. Each time a new deed of trust was recorded specifying both lots, Washington Mutual released the prior deed of trust. In 2003, the homeowners again refinanced the loan and recorded a deed of trust in favor of Washington Mutual ("2003 DoT"). Unlike the prior deeds of trust, the 2003 DoT, while referencing the property's address, only specified Lot 8 as the collateral. The Bank is the current beneficiary of the 2003 DoT.

**¶4**　　　　The homeowners defaulted on the FNB mortgage, and FNB foreclosed on the property in July 2010. After making some payments on the 2003 promissory note, along with taxes and HOA dues, FNB realized that the property's value was far less than the amount owed under the 2003

promissory note and sought to transfer the property. *See Andra R Miller Designs LLC v. US Bank NA*, 244 Ariz. 265, 269–70, ¶ 14 (App. 2018) (a party that purchases from a junior lien takes subject to all senior liens and must pay any senior debt "to avoid the risk of losing [the] newly acquired land to foreclosure by the senior lienholder"). FNB stopped paying on the promissory note, and on March 17, 2011, a notice of trustee sale was recorded to foreclose on Lot 8 under the 2003 DoT.

¶5          Later in 2011, FNB's attorney, Robert Stewart, approached another of his clients, John Holtz, who was a real estate investor, with a proposed deal. Stewart told Holtz that FNB wanted to transfer the property, and it would sell the Lots for $1 each. With Stewart facilitating the transaction, Pheasant Grove (an entity that was created for the transfer) purchased the property from FNB "subject to any applicable encumbrances and any defenses related thereto," for $1 per lot. Around the time Pheasant Grove obtained title to the property, Stewart became Pheasant Grove's attorney and managed the property, which has since been used as a rental.

¶6          In August 2015, the Bank filed a complaint against Pheasant Grove seeking judicial reformation of the 2003 DoT, quiet title, and a declaration that its interest in the property was superior to Pheasant Grove's. The superior court granted judgment in favor of Pheasant Grove, concluding that the three-year statute of limitation for a reformation action had expired and that as the beneficiary, the Bank was not entitled to quiet title. *See Berryhill v. Moore*, 180 Ariz. 77, 88 (App. 1994) ("[U]nder Arizona law, a mortgagee cannot bring an action to quiet title because the mortgagee has no title.").

¶7          The Bank appealed, arguing that the six-year statute of limitation should apply to the declaratory-relief claim because the reformation was related to enforcement. *See* A.R.S. § 12-548(A)(1); A.R.S. § 33-816(A). The Bank claimed that it sought to reform the 2003 DoT before pursuing a trustee's sale of the property. *See Deutsche Bank Nat'l Tr. Co. v. Pheasant Grove LLC (Pheasant Grove I)*, 245 Ariz. 325, 329, ¶ 14 (App. 2018). On February 7, 2017, before this court issued its opinion, the Bank recorded a notice of correction, adding Lot 9 to the 2003 DoT, and filed a new complaint. By that time, the Bank claimed the balance remaining on the promissory note was nearly $1.7 million, and it sought to enforce the 2003 DoT and collect the balance due through a judicial foreclosure. In August 2017, the Bank recorded a notice of trustee's sale for the Lots for November 2017. Pheasant Grove filed a counterclaim alleging that the Bank violated the wrongful-recording statute and sought to quiet title against the Bank. In response, the Bank raised several affirmative defenses, asserting its

interest in the Lots. The superior court stayed the proceeding pending resolution of *Pheasant Grove I*.

¶8            In August 2018, this court issued its opinion holding that the action was not one of enforcement but reformation, and because the declaratory relief would have effectively been a reformation of the 2003 DoT, the three-year statute of limitation applied. *See Pheasant Grove I*, 245 Ariz. at 330, ¶ 17 (the six-year statute of limitation for enforcement of an action did not apply because the relief sought in the complaint equated to "nothing more than an action to reform the 2003 DOT to include Lot 9 in the legal description"). Following the decision, the superior court dismissed the Bank's judicial-foreclosure complaint concluding that the Bank was precluded from asserting any claim or defense that may have been brought in the reformation action.

¶9            Also, the court granted Pheasant Grove's request for an order "declaring against Deutsche Bank that Pheasant Grove has clear title to Lot 8 and Lot 9," and ordered the Bank to pay $5000 and Pheasant Grove's attorney's fees as a sanction for recording the notice of correction and notice of trustee's sale when it "knew or had reason to know that the documents were otherwise invalid — the documents violated and were in conflict with the First Judgment." The Bank appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶10            To recover the now over $1.7 million owed under the 2003 promissory note, the Bank used all methods available, both judicial and non-judicial, to enforce the 2003 DoT. Any one of these actions should have resulted in an adjudication of the parties' respective interests. Instead, between the complaint, countercomplaint, and application for wrongful encumbrance, the Bank amassed nearly two dozen issues to raise on appeal. We limit our focus to the dispositive issue — whether a failed reformation action has a preclusive effect on a party's ability to assert its interest in a subsequent proceeding.

¶11            The Bank contends that it is not precluded from enforcement of the 2003 DoT because the parties' respective interests in the property were not adjudicated, and reformation of the 2003 DoT was not necessary for enforcement. Pheasant Grove, however, takes the position that the Bank is forever estopped from asserting *any* interest in *either* lot because the judgment in the first action concluded that the Bank was not entitled to either judicial reformation or quiet-title relief "to terminate Pheasant

4

Grove's ownership interest." Pheasant Grove construes the judgment that held the Bank could not judicially reform the 2003 DoT as a determination that Pheasant Grove's interest in the property is superior and that "the First Judgment properly removed the 2003 DoT as a cloud upon Pheasant Grove's title."

¶12         Under Pheasant Grove's theory, the Bank was precluded from raising the 2003 DoT, or any circumstances surrounding the 2003 DoT, if it could potentially result in a determination that the Bank's interest in the property was superior to Pheasant Grove's. Pheasant Grove asserts that claim-preclusion and collateral-attack doctrines prohibit the Bank from recording a "notice of correction" to the 2003 DoT, seeking judicial foreclosure of Lot 9, seeking a judicial foreclosure of Lot 8 (which no party disputes was in the 2003 DoT), enforcing the 2003 DoT through a trustee's sale, and defending its interest in Pheasant Grove's quiet-title action. This is because any claim or defense that relates to the Bank's interest could have been brought in the first action and is, therefore, precluded from being "relitigated." Thus, any claim or defense that would result in a judgment that prioritized the Bank's interest over that of Pheasant Grove is a collateral attack on the first judgment. We are not persuaded.

## A.         The Court Erred by Dismissing the Bank's Complaint.

¶13         The superior court dismissed the Bank's judicial foreclosure-complaint and ordered, as against the Bank, Pheasant Grove had clear title to Lot 8 and Lot 9. We review the claim-preclusive effect of a prior judgment *de novo*. *Howell v. Hodap*, 221 Ariz. 543, 546, ¶ 17 (App. 2009). The court erred by dismissing the complaint and precluding the Bank from presenting a defense against Pheasant Grove's quiet-title action. Despite Pheasant Grove's assertions, there has never been an adjudication of the parties' respective interests, nor has a judgment been rendered that declared Pheasant Grove's interest superior to the Bank's. *But see Lee v. Johnson*, 70 Ariz. 122, 127 (1950) ("A decree *quieting title to certain land*, is, therefore, res judicata of all issues applicable to title." (emphasis added)).[1]

---

[1]         For this reason, we reject Pheasant Grove's argument that any subsequent judgment that has the effect of reforming the deed, i.e., accepting the Bank's claim, would be a collateral attack on the reformation determination or the order denying the Bank's motion to amend. Neither the superior court, nor this court, determined the parties' interests.

1. **A Party is Not Required to Assert a Claim for Judicial Foreclosure in the Same Action as a Claim to Reform a Deed of Trust.**

¶14  "Under the doctrine of res judicata, a final judgment which is rendered upon the merits, without fraud or collusion, and by a court of competent jurisdiction, is conclusive as to every point decided and as to every point which could have been raised by the record." *Read v. City of Scottsdale*, 107 Ariz. 524, 526 (1971). "A party asking the courts to assist him in settling his differences with another, in all fairness to the courts and all adverse parties, ought to make a full and complete exposition of his case so that it may be ended with one trial and one decision. It is against public policy to split a cause of action and to make two or more suits of it when one is sufficient." *Williams v. Williams*, 32 Ariz. 164, 168 (1927).

¶15  In determining whether one is sufficient, the parties argue over whether we employ the same evidence or transactional test—both asserting that under either test, it would prevail. We do not need to examine whether the claims or issues "aris[e] out of the same nucleus of operative facts," *see State v. Youngblood*, 173 Ariz. 502, 504 (1993), or whether "additional evidence is needed to prevail in the second action than that needed in the first," *Phoenix Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 240 (App. 1997), because under similar circumstances nearly a century ago, our supreme court held ''[t]he estoppel extends only to the exact point raised by the pleadings and decided, and does not operate as a bar to a second suit on other claims or issues, or against other parties." *Williams*, 32 Ariz. at 174 (quotation omitted).

¶16  Although Pheasant Grove argues that *Williams* is distinguishable, noting each factual distinction, it does not explain the relevance of the differences. Nor does it explain why the same reasoning would not apply to the situation at hand.

> We think, under the circumstances, it would be inequitable to deprive plaintiff from realizing on all of his security, or so much thereof as is necessary to satisfy his debt, since the mistake in bringing his first foreclosure suit, whether mutual or unilateral, should not be given an 'unintended and unconscionable effect upon the legal rights and obligations' of the parties. In permitting the second foreclosure, [the defendant] will not be deprived of any property or property rights given to her by the mortgagor. It will merely subject her interest, as she impliedly agreed it should be in accepting a

deed thereof, to the payment of the mortgage debt and
establish her status as a redemptioner.

*Williams*, 32 Ariz. at 173. Denying the Bank the ability to argue the 2003 DoT
is enforceable when Pheasant Grove would not be deprived of the
opportunity to establish it was a bonafide purchaser would lead to the
inequitable result the court sought to avoid in *Williams*.[2]

### 2. The Reformation Action Only Decided that the Statute of Limitations Prevented Reformation of the 2003 DoT.

¶17    The Bank was not precluded by the judgment in the first
action from defending its interest in the property in a subsequent
proceeding. Pheasant Grove argues that claim preclusion bars affirmative
defenses that are claims for relief that were or could have been litigated in
the first action and any "defense" that sought enforcement of the 2003 DoT
was affirmative relief that had been denied in the first action or that was
otherwise barred by claim preclusion. But Pheasant Grove successfully
argued in the previous litigation that the enforcement statute of limitation
did not apply to a reformation action. Having obtained that ruling,
Pheasant Grove cannot now assert that the previous appeal encompassed
the issue of the applicability of the enforcement statute of limitation. The
claims and defenses indeed share a common thread—that the Bank must
prove that the parties intended for Lot 9 to be included in the 2003 DoT.
Still, it does not follow that because the statute of limitations barred the
reformation action, the Bank is precluded from raising the issue of the

---

[2]    We also reject the claim-preclusion argument because requiring the
Bank to include its claim for judicial foreclosure would have eliminated the
option of a trustee sale. *See* A.R.S. § 33-807(B) ("A sale of trust property
under the power of sale shall not be held after an action to foreclose the
deed of trust has been filed unless the foreclosure action has been
dismissed."). The Bank is free to exercise either option.

parties' intent in a different action—whether as a claim or defense.[3] Accordingly, the Bank is not precluded from asserting its interest in the property any more than Pheasant Grove is precluded from seeking quiet title from the Bank—which it likewise could have done in the first action. *See Levin v. Hindhaugh*, 167 Ariz. 110, 111 (App. 1990) ("In Arizona, a compulsory counterclaim must be asserted against the plaintiff in order to avoid the application of the principle of res judicata.").

### 3. Foreclosing on an Imperfect Deed of Trust Is Not Governed by the Statute of Limitation for Judicial Reformation.

**¶18** Next, Pheasant Grove argues that the court correctly dismissed the complaint because the Bank was precluded from both judicial and non-judicial enforcement because of the statute of limitations. The applicable statute of limitation for a trustee's sale or a judicial foreclosure is six years. *See* A.R.S. § 12-548(A)(1); A.R.S. § 33-816(A) ("The trustee's sale of trust property under a trust deed shall be made, or any action to foreclose a trust deed as provided by law for the foreclosure of mortgages on real property shall be commenced, within the period prescribed by law for the commencement of an action on the contract secured by the trust deed."); *Stewart v. Underwood*, 146 Ariz. 145, 150 (App. 1985).

**¶19** The court found that the Bank's cause of action accrued on either March 1, 2011, or March 17, 2011. *See Andra R Miller Designs*, 244 Ariz. at 270, ¶ 15 (the acceleration of a debt triggers the statute of limitations). The Bank filed the judicial-foreclosure action on February 7, 2017, within six years of the accrual date. In August 2017, the Bank recorded a notice of its intent to conduct a trustee sale in November 2017, after the applicable statute of limitations expired. The Bank argues that the court erred in determining the accrual date, claiming that it had revoked the acceleration of the debt. Because we are remanding for the court to decide the judicial foreclosure, which was indisputably commenced within the statute of

---

[3] Pheasant Grove also contends that the Bank is precluded from raising the defense because of the unclean-hands doctrine. It argues that because it was forced to bring the quiet-title action in response to the Bank's wrongful recordings, the Bank should be precluded from asserting its defense. If the Bank were able to prove what it asserts as its defense, we fail to see how it would have violated the statute. Nevertheless, Pheasant Grove provides no support for the argument and the issue is moot because the court's findings with respect to the wrongful recordings were based on an erroneous interpretation of the law.

limitation period, we do not need to address whether the Bank properly revoked the acceleration.

**¶20**          Pheasant Grove, however, argues that the statute of limitations expired on *both* the non-judicial enforcement and the judicial foreclosure. It claims that because the judicial foreclosure of the corrected 2003 DoT "necessarily require[d] a court to recognize" the correction or reformation, the Bank was required to bring the action within three years of the date of accrual. In effect, Pheasant Grove's position converts any contract-interpretation action into an action for reformation, subject to the lesser statute of limitations.

**¶21**          Concerning Lot 8, which is expressly provided for in the 2003 DoT, Pheasant Grove cannot argue that the reformation statute of limitation applies—thus, it asserts claim preclusion. We reject that argument and remand for the court to decide the merits of the claims, and, if necessary, determine how to proceed with each party having an interest in one of the Lots.

## B.    Reformation Is Not Required Before Enforcing the Deed of Trust.

**¶22**          "The law is well settled that courts of equity have jurisdiction to relieve parties against the consequences of mutual mistake of fact and to grant reformation in case of such a mistake." *City of Scottsdale v. Burke*, 19 Ariz. App. 11, 14, (1972). "Reformation is an equitable remedy available to correct a deed to reflect the parties' intent." *In re Estate of Ganoni*, 238 Ariz. 144, 147, ¶ 15 (App. 2015). Pheasant Grove has not identified any Arizona case that requires a party to seek judicial reformation before enforcing its rights under a deed of trust.

**¶23**          "[E]ven an unrecorded instrument is fully enforceable between the parties to the transaction," *3502 Lending, LLC v. CTC Real Estate Serv.*, 224 Ariz. 274, 277, ¶ 14 (App. 2010), "and as to all subsequent purchasers with notice thereof," A.R.S. § 33-412(B). So too is a recorded document that omits statutorily required information, provided "the documents met the requirement of A.R.S. § 33-802(A) when they were executed by the parties to the agreement." *3502 Lending*, 224 Ariz. at 277, ¶ 14. "[A]n invalid deed of trust still may provide constructive notice if it sufficiently 'apprised third parties of the nature and substance of the rights claimed under the deed of trust.'" *Id.* at ¶ 17 (quoting *Watson Const. Co. v. Amfac Mortg. Corp.*, 124 Ariz. 570, 576 (App. 1979) (a deed of trust that "set forth the names of the parties, the nature of the transaction, described the property involved, and stated the amount of indebtedness" was sufficient

to 'apprise[] third parties of the nature and substance of the rights claimed' under the deed of trust, and thus imparted constructive notice)); *Manicom v. CitiMortgage, Inc.*, 236 Ariz. 153, 159, ¶ 23 (App. 2014) ("[W]e do not strictly enforce every element of a deed of trust; rather, we examine the Deeds of Trust Act 'as a whole' to determine whether the legislature intended for a defect to be fatal." (citing *In re Bisbee*, 157 Ariz. 31, 33 (1988))).

**¶24**       We have not required the parties seeking to enforce a deficient or defective deed of trust first to seek judicial reformation. The only relevant question in each of the above cases was whether the party from whom enforcement was sought had sufficient notice of the encumbrance.[4]

## CONCLUSION

**¶25**       Accordingly, we vacate the superior court's judgment, including sanctions and attorney's fees awarded against the Bank and remand for the court to decide the claims. Both parties request an award of attorney's fees. Because we remand the case for resolution on the merits, we leave the issue of appellate attorney's fees to the superior court's discretion upon its final disposition of the case. The Bank is entitled to its costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[4]       Pheasant Grove argues that because the Bank claimed in the first action that it was seeking judicial reformation so it could conduct a trustee's sale, that, as to the Bank, judicial reformation is required before it may enforce the non-judicial foreclosure. We find no support for the proposition that a party is obligated to conform its future conduct to be consistent with its prior mistaken belief in the law.